16894

SAMMONS v. CITY OF BEAUFORT *ET AL.*
(83 S. E. (2d) 153)

*W. Brantley Harvey, Esq.,* of Beaufort, *for Appellant,*

*Messrs. Wm. N. Levin,* of Beaufort, and *Huger Sinkler,* of Charleston, *for Respondents,*

July 21, 1954.

OXNER, Justice.

The Court is asked in this action to render a declaratory judgment with respect to the constitutionality of a 1954 act of the General Assembly approved by the Governor on March 26, 1954, 48 St. at L. 1771, known as the "Off-Street Parking Facilities Act," and the validity of certain covenants and pledges made thereunder by the governing body of the City of Beaufort in connection with a proposed issue of revenue bonds to defray the cost of providing off-street public parking facilities.

Parking lots and buildings are among the projects which a municipality may establish and finance under the Revenue Bond Act, Sections 59-361 to 59-415, inclusive, of the 1952 Code. The purpose of the challenged legislation enacted in 1954 was to facilitate the financing of off-street parking facilities by authorizing the issuance of revenue bonds secured by a pledge not only of the revenue derived from the project undertaken, but also that derived from on-street parking facilities. To accomplish this purpose, municipalities were further authorized to make certain covenants which will be hereinafter discussed.

There are now on the streets of Beaufort 140 curb-line parking meters from which it receives annually approximately $6,500.00. The City Council desires to provide additional parking facilities by filling in and improving a low,

waterfront lot adjoining the business area of Beaufort, and converting same into a parking lot. The estimated cost of the project is around $100,000.00. It seems to be conceded that the revenue to be derived from the meters on said lot will probably be insuficient to service bonds in the above amount. Following the passage of the 1954 statute, the City Council decided to finance said project by the issuance of bonds secured by a pledge of the revenue derived from the meters located on the parking lot, and also from those on the streets. The proposed bonds will mature serially over a period of twenty years and will be issued pursuant to the provisions of the Revenue Bond Act as implemented by the Off-Street Parking Facilities Act.

An appropriate ordinance has been passed by the City of Beaufort whereby said municipality has covenanted and agreed to put into effect, and keep in force during the life of the bonds, charges for both off-street and on-street parking sufficient to produce revenues necessary to service the bonds, to provide a cushion fund therefor, to operate and maintain all of its parking facilities, and to provide appropriate sums for depreciation and contingencies. The City has further convenanted to enact and keep in force during the life of the bonds an ordinance making it a criminal offense for anyone to use its parking facilities without paying the proper charges, or to disobey the regulations imposed with respect to the use of such facilities.

It seems to be conceded that the legislation heretofore mentioned authorizes a municipality to make covenants of the foregoing nature.

The ordinance authorizing the issuance of said bonds also contains a covenant, conventional in revenue bond proceedings and authorized by the Revenue Bond Act, imposing a statutory lien upon both the on-street and off-street parking facilities, and providing that should the City of Beaufort default in the payment of the principal or interest on said bonds, the Court may appoint a receiver to administer and

operate the facilities, with power to fix rates and charges, and to collect revenues sufficient to provide for the payment of the bonds and the expenses of operating and maintaining the facilities.

The Court below sustained the constitutionality of the "Off-Street Parking Facilities Act", and upheld the validity of all the covenants just discussed.

The first question we are asked to determine is whether a municipal off-street parking facility may be properly classified as an undertaking for a public or municipal purpose. It was held in *Cathcart v. City of Columbia,* 170 S. C. 362, 170 S. E. 435, that the various projects then enumerated in the Revenue Bond Act were within the scope of the powers of a municipality. Subsequently in 1949, Act March 21, 1949, 46 St. at L. 103, parking lots and various other undertakings were added. A parking lot serves a public purpose to as great, if not greater, degree than many of the purposes upheld by the Court in the *Cathcart case.* We have no hesitancy in concluding that the proposed undertaking is for a public purpose. This view is sustained by the overwhelming weight of authority, as shown by annotation found in 8 A. L. R. (2d) beginning on page 373.

The challenged legislation contemplates that a municipality may establish off-street parking facilities whenever traffic conditions create a need therefor. It has been suggested that there is no showing in the instant case of any such need for the City of Beaufort. However, it will be presumed that local conditions are such as to justify the project. *Owens v. Owens, Mayor,* 193 S. C. 260, 8 S. E. (2d) 339. There is nothing here to rebut such a presumption.

It is next contended that "the entire plan is discriminatory, lacking in uniformity, and favoring those who use the facilities and pay the fees against those who do not." While some language of the Court in *Britt v.*

*City of Wilmington,* 236 N. C. 446, 73 S. E. (2d) 289, tends to sustain this contention, we fail to see any basis for the claim of discrimination. A uniform schedule of rates and charges is to be put into effect by the City of Beaufort which will apply equally to all persons using the parking lot. It will be open to the public and anyone who violates the regulations will be subject to the penalties provided for by the ordinance.

The third question is whether a municipality may finance the construction of off-street parking facilities by revenue derived in part from curb-line meters. It is argued that *Owens v. Owens, Mayor, supra,* 193 S. C. 260, 8 S. E. (2d) 339, 341, limits the charges for on-street parking to those necessary to pay the cost of purchasing, maintaining and operating the parking meters, and prohibits a municipality from using such facilities for the purpose of raising revenue. Accordingly, it is contended that since the proposed parking lot will not be self-sustaining, the City of Beaufort may not use a profit from the operation of its on-street meters to make up the deficiency. Attention is also called to the fact that the ordinance authorizing these bonds provides for a "cushion fund" and also for contingencies, thereby clearly indicating that the entire parking facilities of Beaufort are to be operated for profit.

In the *Owens case,* we sustained an ordinance of the City of Columbia providing for the installation and maintenance of parking meters on its streets. It was there held that a municipality may in the exercise of the police power regulate the use of its streets by designating individual parking spaces thereon and making a charge for such facilities through the use of parking meters, but may not, under the guise of regulation, lay a license or privilege tax upon the use of its streets, and that the police power could not be exercised for the purpose of raising revenue. The Court stated: "We think that it is clearly the law that a regulatory measure of this kind may produce only such revenue as is reasonably necessary to defray the expense connected

with its operation, and that an ordinance passed for the real purpose of raising revenue, under the guise of obtaining funds for the enforcement of a police regulation, is invalid."

But we do not think it follows that a municipality may not use the revenue from on-street parking facilities to defray in part the cost of establishing and maintaining a parking lot. Both facilities are interrelated and constitute a uniform parking system. The right to establish a parking lot is a necessary adjunct to the right to regulate traffic. No good reason appears why both on-street and off-street parking may not be combined to accomplish the general objective of regulating the use of the streets. So long as the total revenue received from both on-street and off-street meters does not substantially exceed that necessary to defray the expenses incident to the regulation of parking, including the acquisition and improvement of off-street parking facilities, we do not think there is any violation of the rule that the police power cannot be used to raise revenue. Nor is it objectionable to provide an excess for a "cushion fund" and contingencies. This is essential to safeguard against fluctuations in revenue which are likely to occur from year to year. As stated in *State v. Douglas,* 117 Vt. 484, 94 A. (2d) 403, 406; "The vital questions are whether the primary purpose of the ordinance was to regulate traffic and whether the revenue received by the city has some reasonable relation to the expense incurred for the parking of vehicles."

In each of the following cases the Court upheld the power of a municipality to use revenue derived from on-street parking to defray in part the cost of providing off-street parking facilities: *Brodhead v. City and County of Denver,* 126 Colo. 119, 247 P. (2d) 140; *State ex rel. Gordon v. Rhodes,* 158 Ohio St. 129, 107 N. E. (2d) 206; *Wayne Village President v. Wayne Village Clerk,* 323 Mich. 592, 36 N. W. (2d) 157, 8 A. L. R. (2d) 357; *Gate City Garage, Inc. v. City of Jacksonville, Fla.* 66 So. (2d) 653; *State ex rel. Bibb v. Chambers,* W. Va., 77 S. E. (2d) 297; *Poole v.*

*City of Kankakee,* 406 Ill. 521, 94 N. E. (2d) 416. It is true that a somewhat different conclusion was reached by the Supreme Court of North Carolina in *Britt v. City of Wilmington, supra,* 236 N. C. 446, 73 S. E. (2d) 289, but the Court rested its decision in part upon the ground that a municipal off-street parking facility constituted a proprietary function, while on-street parking was an essentially governmental one, a distinction not recognized in South Carolina. *Irvine v. Town of Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A., N. S., 363; *Looper v. City of Easley,* 172 S. C. 11, 172 S. E. 705; *Carter v. City of Greenville,* 175 S. C. 130, 178 S. E. 508. There is also some dissimilarity between the statute involved in the *Britt case* and the one under consideration.

The next question relates to the validity of the covenants on the part of the Town of Beaufort to maintain on-street parking facilities throughout the life of the bonds, and to make it a criminal offense to make use of such parking facilities without paying the charge established therefor or to violate the regulations promulgated with respect to the use thereof. It is said that the effect of these covenants is to barter away the police power.

In pledging during the life of the bonds the revenue from on-street parking facilities, the only reservation made is that required by the Act of 1954, which is as follows:

"But in making any pledge pursuant to the Revenue Bond Act or the Refunding Revenue Bond Act, the municipality shall reserve the right to make appropriate changes in the location of any parking meters or other part of any On-Street Parking Facilities, made necessary by street widening or street closing, and shall also reserve the right to substitute and make changes in the location of parking meters or other part of any On-Street Parking Facilities, to provide essential and necessary traffic regulation and control, so long as any changes made pursuant to such reservations of right shall not materially lessen the amount of revenues to be derived from its On-Street Parking Facilities."

It is a fundamental principle of constitutional law that no legislative body may part with its right to exercise the police power, nor may a municipality to which such power has been delegated divest itself of same by contract or otherwise. It is a continuing power which may be exercised as often as required in the public interest and must always remain fluid. *Douglas v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49 L. R. A., N. S., 958; 11 Am. Jur., Constitutional Law, Section 254.

We think that the covenant to maintain during the life of these bonds parking meters on the streets of Beaufort and to charge fees for the use of parking spaces thereon sufficient to service said bonds, constitutes an ineffective attempt to barter away the police power. The Legislature may not authorize the City Council of Beaufort to adopt a system of on-street parking and make it irrevocable during the life of the bonds, so as to preclude a future council from adopting some other, and better, method of regulating traffic, or from prohibiting parking entirely on any or all of the streets. The governing body of the City of Beaufort must be left unrestricted in the future to adopt any parking regulations necessary for the public safety and welfare.

It is fundamental that any use of a highway or street for a purpose other than one for which it was primarily established is always subject to the police power. Any right granted with respect thereto is at all times subordinate to the superior rights of the public. 25 Am. Jur., Highways, 182.

The argument is made that the reservation heretofore quoted leaves future councils free to make necessary changes in the parking facilities on the streets of the City of Beaufort. It is true that the right is reserved to make appropriate changes in the location of parking meters where necessary in the regulation and control of traffic, but this is subject to the limitation that no such changes shall "materially lessen the amount of revenues to be derived from its On-Street

Parking Facilities." It will thus be seen that the City covenants that the revenue derived from the on-street parking meters shall not be substantially reduced. As a result, future councils would be considerably restricted in making changes and certainly could not do away entirely with parking meters on the streets.

While the Legislature may not authorize a municipality to covenant that it will maintain parking meters on all or any of its streets or to covenant as to the production of any fixed amount of revenues from on-street parking meters, we think it may, and has under the legislation heretofore discussed, authorize a municipality to pledge such revenues as it may derive from such on-street parking meters as it may maintain. Apparently such covenants have enabled municipalities in other jurisdictions to finance off-street parking facilities. *Brodhead v. City and County of Denver, supra,* 126 Colo. 119, 247 P. (2d) 140; *State ex rel. Gordon v. Rhodes, supra,* 158 Ohio St. 129, 107 N. E. (2d) 206.

We have carefully considered the following cases: *Wayne Village President v. Wayne Village Clerk, supra,* 323 Mich. 592, 36 N. W. (2d) 157, 8 A. L. R. (2d) 357; *Gate City Garage, Inc. v. City of Jacksonville, supra,* Fla., 66 So. (2d) 653; *State ex rel. Bibb v. Chambers, supra,* W. Va., 77 S. E. (2d) 297; *Poole v. City of Kankakee, supra,* 406 Ill. 521, 94 N. E. (2d) 416. Covenants to maintain on-street parking meters throughout the life of certain revenue bonds were upheld in these decisions. However, the question of whether a covenant of this nature constituted an attempt to barter away the police power was not discussed in the Michigan case, not referred to in the majority opinion in the Florida case, although lucidly discussed in the dissenting opinion. It must be conceded that the question of bartering away the police power was squarely met in the West Virginia and Illinois decisions, but we are not in accord with the views therein expressed on this question.

The covenant to keep in effect an ordinance making it a criminal offense to violate parking regulations is likewise invalid. No city council may be empowered to enact any kind of criminal ordinance and make same irrevocable.

The validity of the entire covenant in so far as it relates to off-street parking facilities is so apparent as to require no discussion here.

There remains for consideration the validity of the covenant giving the bondholders a lien on all the parking facilities of Beaufort and proving that upon default, a receiver may be appointed to take over and operate both the on-street and off-street parking. The Revenue Bond Act authorizes a covenant of this nature, and it was upheld in *Cathcart v. City of Columbia, supra,* 170 S. C. 362, 170 S. E. 435, 438. The Court stated that the lien thus created "would apply only to the project constructed by moneys derived from the sale of the bonds and would partake of the nature of a purchase-money mortgage." The undertaking there involved was a municipal stadium. Here an entirely different situation is presented. It is proposed to create a lien not only on the project being constructed but to extend same to on-street parking facilities, an essential governmental function. It would hardly be suggested that a municipality may mortgage its streets or delegate to a court the power to regulate traffic. This covenant is obviously invalid so far as it pertains to on-street parking facilities.

The order appealed from is modified in accordance with the views herein expressed.

STUKES and LEGGE, JJ., and M. M. MANN, A. A. J., concur.

TAYLOR, J., not participating.