(No. 33819.—

Maurice O. Cherry *et al.,* Appellants, *vs.* The City of Rock Island, Appellee.

*Opinion filed February 28, 1956—Rehearing denied March 21, 1956.*

EAGLE & EAGLE, of Rock Island, for appellants.

CHARLES D. MARSHALL, JR., City Attorney, of Rock Island, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiffs appeal directly to this court from a decree of the circuit court of Rock Island County dismissing for want of equity their complaint to declare invalid a municipal off-street parking revenue bond ordinance of the city of Rock Island and to enjoin payment of bonds issued thereunder. The trial court certified that the validity of a municipal ordinance was involved and that the public interest required a direct appeal.

The sole contention in the complaint is that the city of Rock Island has surrendered its police power by virtue of certain specific covenants authorized and required to be in the bonds by the ordinance. It is specifically contended that section 9(c) of the ordinance surrenders city control over buildings and other facilities to be erected in the future on lots to be acquired in the future and over free parking thereon; that section 9(e) surrenders city control over street traffic; and that sections 9(g) and 10 surrender power to finance and acquire future parking lots.

Insofar as pertinent, those sections of the ordinance provide as follows:

"Section 9.  *  *  *

"(c)  *  *  *  that the City will from time to time make all needful and proper repairs, replacements, additions, and betterments to the equipment and facilities of said system

so that it may at all times be operated properly and advantageously, and when any parking meter or other equipment or facilities of said system shall have been worn out, destroyed, or otherwise become insufficient for proper use, it shall be promptly replaced or repaired so that the value and efficiency of the facilities shall be at all times fully maintained and its revenues unencumbered by reason thereof; provided, however, said City shall at its discretion be authorized to provide facilities for free off-street parking not to exceed ten per cent (10%) of the square-foot area of all the said off-street parking facilities of said City.

\* \* \*

"(e) That the City will maintain parking meters and collect rates therefrom in the manner required by this ordinance on all public streets where such parking meters are presently located as of the date of the passage of this ordinance, and on such streets and in off-street parking lots where parking meters shall hereafter be located until all of the bonds authorized by this ordinance have been paid in full, both as to principal and interest; provided, however, this covenant shall not be construed to prohibit necessary changes in the location of such parking meters made necessary by street widening or street closings or substitution or changes in the location of parking meters to provide essential and necessary traffic regulation and control and which will not materially lessen the income and revenues to be derived from such meters.

\* \* \*

"(g) That so long as any of the bonds authorized hereunder are outstanding, the City will not sell, loan, mortgage or in any manner dispose of or encumber said parking system until all of said bonds hereby authorized shall be paid in full, both principal and interest, ·or unless and until provision shall have been made for the payment thereof, and that said City will take no action in relation

to said facilities which would unfavorably affect the security of the bonds or the prompt payment of principal and interest thereon;

\* \* \*

"Section 10. \* \* \* while any of the bonds herein authorized to be issued are outstanding, no bonds or other obligations payable from and sharing ratably and equally with the bonds herein authorized in the income and revenues derived and to be derived from the motor vehicle parking system of said City, as herein defined, shall be issued unless the average net revenues, determined after deducting all operation and maintenance expenses, derived from the operation of said motor vehicle parking system for the last two preceding fiscal years, or the net revenues for the then last preceding fiscal year, whichever shall be the lower, are equal to at least one and one-half times the maximum amount to become due in any year for principal and interest on all bonds then outstanding payable from the revenues of such system and on such additional bonds proposed to be issued."

This ordinance was adopted by the city pursuant to authority granted by article 52.1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1953, chap. 24, par. 52.1—1, *et seq.*) commonly referred to as the Parking Act. Such act specifically empowers corporate authorities to provide in the bond ordinance such "covenants as may be deemed necessary or desirable to assure a successful and profitable operation of the project and prompt payment of principal of and interest upon the said bond so authorized." (par. 52.1—3(f)) It also authorizes the municipality to covenant "to maintain the project in good condition" (par. 52.1—3(e)) and concerning "the issuance of additional bonds that may thereafter be issued payable from the revenues derived from the operation of any such parking facilities." (par. 52.1—3(a)) This court held such act valid in *Poole* v. *City of Kankakee,* 406 Ill. 521,

and no question of statutory validity is here presented.

In the *City of Kankakee case* the validity of a city ordinance adopted under said act was also in issue. Since the ordinance here in question is patterned after and in many respects is similar to the Kankakee ordinance, and since the Kankakee ordinance was attacked on the ground among others that it surrendered police powers of the municipality, defendants assert that the decision of this court in the *City of Kankakee case* resolves the issues here presented and is conclusive.

We have examined carefully the *Kankakee case* and are of the opinion that the issues there presented and the reasoning of this court therein does furnish the answer to all of plaintiffs' contentions. When presented to this court for decision two grounds of invalidity of said ordinance, among others, were asserted, *viz:* (1) the act granted no authority to pledge income of parking meters already installed as security for the bonds to be issued for the payment of the off-street parking sites and, (2) the ordinance relinquished the city's right of police power until the bonds were paid. In considering the first proposition we noted at page 533 that "The validity of an ordinance which is within the power granted is presumed, and the burden of showing its invalidity rests upon the party attacking it." Thereafter, various sections of the act were considered in relation to each other and at page 534 we observed as follows: "Considering the Parking Act as a whole, it is apparent that the legislature had the entire parking system of a city under consideration and not just the separate facilities which would be acquired. To say that the parking system should be broken down into isolated parts for financing and disposal of revenue is inconsistent with the public purpose of the act, *i.e.,* the orderly control and regulation of traffic. The language employed indicates the legislature intended that, where necessary, a city could, within its discretion, pledge the revenues from 'any or all' of its

parking facilities for the purpose of maintaining, extending or improving the overall uniform parking system." As to such first argument it was then held that the pledge of income from existing facilities did not render the ordinance invalid.

As to the second argument that the Kankakee ordinance surrendered the city's police power because of the provision preventing any change in the ordinance until the bonds were paid in full, such provision was considered in its relation to other ordinance provisions concerning change of location of meters when necessary for traffic regulation and control, withdrawal of existing off-street parking facilities for erection of multiple level parking structures, provision of limited free off-street parking and the right of redemption. After recognizing that a city may not validly enter into a contract the effect of which is to prevent the exercise of police power by the State, we held that there was no such attempt in the Kankakee ordinance, saying at page 536: "Insofar as we can determine, the ordinance here commits the city only to the performance directed by the Parking Act, and as such does not constitute a surrender of its police power."

The Rock Island ordinance is identical with the Kankakee ordinance except the right to provide free off-street parking is limited to 10 per cent instead of 25 per cent of such facilities. The parking system must be considered as an entirety, as recognized in the *Kankakee case*. While in such case our remarks were directed to the pledge of revenues from existing facilities, the same reasoning applies with equal or greater force to facilities to be acquired in the future. The covenants complained of specifically follow the authorization contained in the act to provide such covenants as may be necessary to assure a successful and profitable operation of the project and prompt payment of the bonds, and to maintain the project in good condition, and concerning issuance of additional revenue bonds.

The judgment of the city council within its express authority as to what is necessary or desirable in that respect will not be overridden by the court in the absence of a clear showing of error or abuse of discretion. (*Melton* v. *City of Paris*, 333 Ill. 190.) No such showing is here made.

Plaintiffs cite no decisions from this State supporting their position but do refer to three cases from foreign jurisdictions. In *Sammons* v. *City of Beaufort*, 225 S.C. 490, 83 S.E.2d 153, the South Carolina court held that a covenant to maintain on-street parking meters throughout the life of certain revenue bonds was invalid as a surrender of police power over traffic regulation, but specifically recognized that Illinois had squarely met the same issue and held to the contrary in the *City of Kankakee case.*

The opinion in the South Carolina case expressly recognizes that not only Illinois, but also Michigan, Florida, and West Virginia have approved such covenants as are here involved as not surrendering its police power.

In *City of Panama City* v. *State*, 60 So.2d 658, the Florida courts reached a conclusion similar to the South Carolina courts, but the subsequent case of *Gate City Garage* v. *City of Jacksonville*, 66 So.2d 653, suggests a different view. The case of *State* v. *City of Topeka*, 176 Kan. 240, 270 Pac.2d 270, is not in point on the facts, as it involved a municipal lease and not a revenue bond issue.

Plaintiffs in effect ask this court to overrule its prior decision in the *City of Kankakee case*. Considering the Rock Island ordinance in its entirety with the Parking Act it does not appear that the city of Rock Island has surrendered any of its police powers, but on the contrary has retained wide discretion in that respect while reasonably protecting the interests of holders of its revenue bonds by covenants specifically authorized in the enabling statute.

The decree of the trial court is affirmed.

*Decree affirmed.*