21222

G. CURTIS MARTIN INVESTMENT TRUST and R. Gordon Darby, Respondents, v. Cecil D. CLAY, Henry E. Hollinshead, Clifton D. Green, Jr., Malcolm C. Hursey, Hiram C. Adams, James H. Lee, Sr., Charles M. Lanford, Mary N. Miller, and Alfred Williams, Constituting the Membership of the North Charleston Sewer District, Appellants.

(266 S. E. (2d) 82)

*David G. Jennings,* Charleston, *for appellants.*

*Lawrence E. Richter, Jr.,* Mount Pleasant, *for respondents.*

May 7, 1980.

HARWELL, Justice:

The appellants, Commissioners of the North Charleston Sewer District, appeal from an order granting respondent's [1] motion for summary judgment. The circuit judge found that the appellants had unlawfully declined to process respon-

dent's application for sewer service and, based upon this finding, ordered the appellants to perform all acts necessary to grant the respondent the service requested. The order appealed from is affirmed in part and modified in accordance with the views herein expressed.

The North Charleston Sewer District, a body politic and corporate with perpetual secession created by Act 1768, Statutes at Large of South Carolina (1972), on or about July 1, 1976 contracted through its commissioners with Aiken Land Company, Buckner Land Corporation, Northwoods Estates Utilities, Inc., and T. L. Bonner to transfer the privately owned sewer system known as Northwoods Estates Utilities, Inc. from the latter entities and individual to the District.

The critical part of the transfer, and the sources of contention in this litigation, is a portion of the agreement which reserves unto Bonner, the former principal owner, the power to approve or disapprove for connection to the system any project other than a single family dwelling and small commercial establishments of a defined class. Specifically, Bonner has the say as to whether any other commercial establishment, townhouses, apartments or condominiums may tap-on to the Northwoods system until such time as the District connects the system with the District's main line.[2] The

---

[1] By order of this Court dated April 1, 1980, G. Curtis Martin Investment Trust and R. Gordon Darby were substituted as respondents in place of G. Curtis Martin.

[2] The July 1, 1976 Agreement referred to above contained the following provisions:

2. The District recognizes the cost and expense that Northwood, Buckner, Aiken and Bonner have incurred in constructing, operating, and maintaining the existing system. In accordance with the foregoing, the District and Northwood, Buckner, Aiken and Bonner agree as follows:

(a) Only single family residential dwellings and small commercial establishments, i. e. convenience stores, service stations, etc., whose daily requirements do not exceed 500 gallons per day, along Otranto Road, which now or in the future abut the existing Otranto Road portion of the Northwoods system, may tap on to the present system, or as expanded by the Northwood, Buckner, Aiken or Bonner, conveyed under this Agreement. Specifically excluded are any type of other commercial developments, townhouses, apartments and condominiums, unless otherwise agreed in writing by Bonner, until the District discontinues the use of the lagoon and connects the System to the trunk line referred to hereinabove in Paragraph 1.

sewerage system in question, although owned, operated and maintained by the District, is a self-contained unit, served by its own lagoon and does not at present flow into the regional sewage treatment facilities of the District.

G. Curtis Martin, the original petitioner in this action, requested service for three hundred apartment units and tendered payment to the District for the prescribed tap-on fee. The service is available only from the sewer system formerly known as Northwoods, as tap-on by the apartment units to the regional facilities is not possible at this time. At the time of application, the system had the capacity to service the apartment units. The District, pursuant to the contract, notified Bonner of Martin's request. Bonner informed the District that he did not approve the tap-on. The District then instructed Martin that he could not tap-on since he had failed to get Bonner's approval.

Martin filed this action seeking a Writ of Mandamus to require the District to take all necessary steps to grant Martin access to the system in question. The District answered, denying Martin the right to a mandamus and raised the affirmative defense of the terms of the contract.

A motion for summary judgment was filed and the parties have stipulated the essential facts involved in this controversy. The court had before it no dispute as to material evidentiary facts or the conclusions or inferences to be drawn therefrom *South Carolina Farm Bureau v. Scott,* 262 S. E. (2d) 739 (S. C. 1980). This appeal is concerned not with the procedure followed but rather with the conclusion of law reached. The issue before the court below, and this court on appeal, is whether the portion of the agreement between the District and Bonner whereby Bonner was granted the right to approve or disapprove large uses of the sewer system transferred is legally enforceable and binding on the District.

The circuit court judge found the delegation of power to Bonner unlawful and against public policy. We agree. In

addition, he ruled that the agreement as a whole stands, with only the offending provision to fall. The District was ordered to perform all acts necessary to grant Martin the sewer service requested. This is not proper. The order should have required the District to act upon the merits of the application according to the authority delegated to it. *Federal Land Bank of Columbia v. State Highway Department of South Carolina,* 172 S. C. 207, 173 S. E. 635 (1934); *Atlantic Coast Line R. Co. v. Caughman,* 89 S. C. 472, 72 S. E. 18 1911); *State ex rel. Abbeville County v. McMillan,* 52 S. C. 60, 29 S. E. 540 (1898).

The situation in this case is intolerable. Here, the corporate political entity has given a private party the power to arbitrarily approve or disapprove potential users of a system belonging to the corporate political entity. The abdication by the commissioners of their statutory and constitutional responsibility to act for the public welfare to a private party who has no duty to give the public welfare any deliberation was improper. The police power of a corporate political entity cannot be exercised for private purposes or for the benefit of particular individuals or classes. *Willis v. Town of Woodruff,* 200 S. C. 266, 20 S. E. (2d) 699 (1942).

The North Charleston Sewer District as a corporate political entity is clothed with police power. Act 1768 creating the District, though it does authorize discretionary contracting, does not allow the District to delegate away those powers and responsibilities which give life to it as a body politic. A municipal corporaton or other corporate political entity created by state law, to which police power has been delegated, may not divest itself of such power by contract or otherwise. *Sammons v. City of Beaufort,* 225 S. C. 490, 83 S. E. (2d) 153 (1954). The commissioners, but not the private party, must act upon the application in ac-

cordance with the authority conferred upon them by Act 1768.

Affirmed in part and modified.

LITTLEJOHN, NESS and GREGORY, JJ., concur.

LEWIS, C. J., dissents.

LEWIS, C. J. (dissenting) : The majority opinion seeks to determine the validity of the contractual provision in question without the presence of the prior owners of the sewer system as parties to the litigation. The provision struck down by the majority was apparently a material consideration for the transfer of the sewer system to appellants and its validity or effect should not be determined without the Court having before it the parties to the contract.

If the contractual provision in question is void and the former owners would not have entered into the transfer without the inclusion of that provision, question may arise as to the validity of the entire transaction and therefore the authority of appellants to operate under it.

I would reverse the judgment under appeal on the ground that the necessary parties to a determination of the issue are not before the Court, and remand the case for the purpose of bringing in the necessary parties if the present litigants so desire.

I, therefore, dissent.