480 S.E.2d 728

CITY OF BEAUFORT, a South Carolina Municipal Corporation; and Town of Port Royal, a South Carolina Municipal Corporation, Appellants,

v.

BEAUFORT–JASPER COUNTY WATER AND SEWER AUTHORITY, Respondent.

No. 24562.

Supreme Court of South Carolina.

Heard Nov. 6, 1996.

Decided Jan. 27, 1997.

William B. Harvey, III, of Harvey & Battey, Beaufort, and Roy D. Bates, Columbia, for Appellant City of Beaufort.

Joab M. Dowling, Jr. of Dowling Law Firm, P.A., Beaufort, for Appellant Town of Port Royal.

Manton M. Grier and Steve A. Matthews, both of Sinkler & Boyd, Columbia; Raymond H. Williams, of Dukes, Williams, Infinger & Meeks, Beaufort, all for Respondent.

TOAL, Justice:

Appellants City of Beaufort and Town of Port Royal (collectively "Municipalities") appeal the order of the trial court finding invalid certain provisions in contracts between Municipalities and Respondent Beaufort–Jasper County Water and Sewer Authority ("Authority"). We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Authority is a special purpose district created by Act No. 784 of 1954 ("Act 784") for the purpose of providing water service in all areas of Beaufort County except the City of Beaufort and the Town of Port Royal.[1] Municipalities are

---

1. Act 784 has been amended several times since 1954, but none of the amendments are relevant to the present case. The most current version of the statute will be quoted in this opinion.

located in northern Beaufort County. Each municipality operates its own water system.

Prior to April 1963, Authority became interested in installing water lines to serve certain Marine Corps facilities located at Parris Island and Beaufort. However, Authority lacked the funds to install the necessary water lines. In order to finance the construction, Authority entered into contracts with Beaufort and Port Royal whereby Municipalities agreed to purchase from Authority all their water for corporate purposes and for their own residents and customers. These contracts gave Authority the necessary funds for installation of the water lines to serve the Marine Corps. Authority's contract with Beaufort has twice been amended, most recently in 1976. Authority's contract with Port Royal was amended in 1966.

All relevant versions of the two contracts contain the following provision (the "Contested Clauses"):

> The Authority shall not sell water to be used by persons, private corporations or other municipalities ... in Beaufort County, without the consent of Beaufort and the Town of Port Royal ... unless said City and/or Town refuse or neglect to render such service to such persons, private corporations or other municipalities within a reasonable time after the same has been demanded.

The Contested Clauses constituted consideration for Municipalities' agreement to purchase their water from Authority. In other words, Municipalities and Authority benefited from the contracts executed in 1963,[2] and for years Authority complied with the Contested Clauses.

Recently, however, Authority completed a transmission line to provide water to southern Beaufort County and to parts of Jasper County. Apparently, Authority intended to sell water in these areas without giving Municipalities the right of first refusal as required by the Contested Clauses. In 1995, Municipalities brought an action to enjoin Authority from selling

---

2. Authority benefited from these contracts for years, and we find it somewhat disingenuous for Authority now to argue that it lacked power to delegate its ability to serve Beaufort and Jasper Counties. Nevertheless, we are compelled to base our decision on controlling legal principles, which dictate that the Contested Clauses represent an unlawful delegation of governmental power.

water without complying with the procedures outlined in the Contested Clauses. Authority answered Municipalities' Complaint and, shortly thereafter, moved for summary judgment on the ground that the Contested Clauses were invalid because *ultra vires.*

The trial court granted Authority's motion for summary judgment, finding the Contested Clauses invalid because they (1) contradict Authority's enabling legislation, (2) constitute an unlawful delegation of a governmental function, and (3) constitute an unlawful attempt to grant franchises to Municipalities. Municipalities appeal the trial court's order.

## LAW/ANALYSIS

Although Appellant Municipalities present numerous issues for review, three issues are dispositive: (1) Whether Authority's enabling legislation permits it to grant Municipalities rights of first refusal as to the provision of water service in county areas outside the respective city/town limits of Beaufort and Port Royal; (2) Whether the Contested Clause represents an unlawful delegation of governmental power by Authority and thus is contrary to public policy; and (3) Whether the Contested Clause unlawfully grants a franchise to Municipalities. The trial court ruled against Municipalities on all of these issues. If the trial court ruled correctly as to any one of these issues, the trial court's order must be affirmed.

Municipalities argue that the trial court erred in holding the Contested Clauses constitute an unlawful delegation of governmental authority. We disagree.

When a municipal contract extends beyond the term of the governing members of the municipality entering into the contract, the subject matter of the contract will determine its validity:

> The general rule is that, if the contract involves the exercise of the municipal corporation's business or proprietary powers, the contract may extend beyond the term of the contracting body and is binding on successor bodies if, at the time the contract was entered into, it was fair and reasonable and necessary or advantageous to the municipality. However, if the contract involves the legislative functions or

governmental powers of the municipal corporation, the contract is not binding on successor boards or councils. *Piedmont Pub. Serv. Dist. v. Cowart,* 319 S.C. 124, 459 S.E.2d 876 (Ct.App.1995) (citing *Newman v. McCullough,* 212 S.C. 17, 46 S.E.2d 252 (1948)), *aff'd,* 324 S.C. 239, 478 S.E.2d 836 (1996). The contracts at issue here extended well beyond the terms of the members of the governing bodies that entered into the contracts. Therefore, the appropriate question in this case is whether the subject matter of the Contested Clauses involves a governmental or a proprietary function.[3]

South Carolina's courts have repeatedly held that a municipality's provision of water service to residents and non-residents is a governmental function. *See, e.g., F.W. Sossamon v. Greater Gaffney Metro. Utils.,* 236 S.C. 173, 113 S.E.2d 534 (1960); *Looper v. City of Easley,* 172 S.C. 11, 172 S.E. 705 (1934), *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985); *Calcaterra v. City of Columbia,* 315 S.C. 196, 432 S.E.2d 498 (Ct.App.1993); *cf. G. Curtis Martin Invest. Trust v. Clay,* 274 S.C. 608, 266 S.E.2d 82 (1980) (implying that the provision of sewer service constituted part of the police power—a governmental function—of quasi-municipal sewer district). Municipalities acknowledge these precedents, but assert that provision of water service should be regarded as a governmental function only for purposes of tort liability. We disagree.

There is no basis for finding an action is governmental for purposes of tort liability and proprietary for purposes of contractual validity. Rather, the distinction between governmental and proprietary functions should rest on the nature of the government act at issue rather than on the nature of a subsequent lawsuit. As the Court of Appeals observed in *Cowart,* it is often difficult to determine whether a particular function is governmental or proprietary. For purposes of

---

3. Respondent Authority repeatedly quotes cases that say that "the State makes no distinction between the proprietary and governmental functions of municipalities." *See, e.g., Calcaterra v. City of Columbia,* 315 S.C. 196, 432 S.E.2d 498 (Ct.App.1993). This language is limited to actions brought in tort because case law is clear that in determining the validity of municipal contracts, the distinction between governmental and proprietary functions is significant, if not dispositive. *See, e.g., Newman,* 212 S.C. 17, 46 S.E.2d 252.

determining the validity of a contract requiring or involving a particular action by a municipality, the test for whether the action is governmental or proprietary should be "whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired." *Cowart*, 319 S.C. at 133, 459 S.E.2d at 881. South Carolina courts have struck as invalid many different kinds of contracts binding successor governing bodies. See, e.g., *Cowart*, 319 S.C. at 136, 459 S.E.2d at 882 (employment contract of public officer); *Sammons v. City of Beaufort*, 225 S.C. 490, 83 S.E.2d 153 (1954) (invalidating covenant requiring town to maintain on-street parking facilities throughout life of certain municipal bonds, on ground that such a covenant deprives future boards of police power to adopt parking regulations necessary for the public safety and welfare); *Newman v. McCullough*, 212 S.C. 17, 46 S.E.2d 252 (employment contract of public officer).

As noted above, South Carolina courts already have found the provision of water service to be a *governmental* function of a municipality or quasi-municipal entity. This rule should hold especially true for a water and sewer authority like Authority, which has as its sole function the provision of water and sewer service.[4] Under such circumstances, public policy surely demands that Authority's right to provide water to residents of Beaufort and Jasper counties (outside the limits of the City of Beaufort and the Town of Port Royal) be left relatively unimpaired.

*G. Curtis Martin Investment Trust v. Clay*, 274 S.C. 608, 266 S.E.2d 82, supports this conclusion. In *Clay*, the North Charleston Sewer District entered into an agreement with a private company whereby the company agreed to transfer a privately owned sewer system to the district. Under the terms of the agreement, the company was to retain the power to approve or disapprove for connection to the system "any project other than a single family dwelling and small commercial establishments of a defined class." *Clay*, 274 S.C. at 610,

---

4. We do not speak to more minor delegations of power, but simply find that where the *central, primary* function of a special purpose district is substantially compromised by a contract, the delegation of power may be invalid or unlawful.

266 S.E.2d at 83. Eventually, this provision of the contract was challenged.

The Supreme Court agreed with the conclusion of the circuit court that the delegation of power to the private company was unlawful and contrary to public policy. Specifically, we found that the district could not "delegate away those powers and responsibilities which give life to it as a body politic. A municipal corporation or other corporate political entity created by state law, to which police power has been delegated, may not divest itself of such power by contract or otherwise." *Id.* at 612, 266 S.E.2d at 85.

*Clay* suggests that the provision of utility service, or at least the decision whom to serve, constitutes an exercise of police power (clearly governmental) that may not be delegated. *Clay* also suggests that the provision of utility service is especially governmental in nature where the municipal entity at issue was formed for the specific purpose of providing such service. Like the North Charleston Sewer District, Authority was formed for the specific purpose of providing utility service in a particular service area. Furthermore, like the contested provision of the contract in *Clay,* the Contested Clauses here deprive Authority of the ability to serve persons they would have the right to serve but for the Contested Clauses, which make Authority's right to serve contingent upon Municipalities' desire to serve the customers. Under these circumstances, the Contested Clauses are unlawful as a delegation of governmental power not only because they bind future governing boards of Authority, but also because of the nature of the delegation of power itself.

*Green v. City of Rock Hill,* 149 S.C. 234, 147 S.E. 346 (1929), does not mandate a contrary result. That case concerned, among other things, the validity of an agreement between the City of Rock Hill and a private company whereby the city agreed to build and the company agreed to operate and manage the city's waterworks system. The petitioners contended that the contract unlawfully delegated to a private company the fiduciary and discretionary powers of the city with respect to the control and management of a governmental department of the city. The Court disagreed, finding the delegation to the company was for the physical or mechanical

purpose of delivering to the city a certain sum of water and that no authority was conferred on the company to "distribute, or control in any manner whatever, the supply of water delivered to the city from the company's mechanical control and operation of the physical plant and equipment." *Id.* at 270, 147 S.E. at 359.

In the present case, the Contested Clauses hamper Authority's discretion. Municipalities are not simply operating Authority's system; rather, they have the power to decide when Authority may provide water to anyone in its own service area. This is a far different case from that described in *Green.*

## CONCLUSION

We uphold the trial court's ruling that the Contested Clauses constitute an unlawful delegation of governmental power, both because the Contested Clauses bind future governing boards and, more importantly, because they give away too much power in themselves. In light of our ruling on this issue, we need not reach the other issues raised on appeal. Accordingly, the order of the trial court is **AFFIRMED.**

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.