WEST ANDERSON WATER DISTRICT, Appellant,

v.

CITY OF ANDERSON, South Carolina, Respondent.

Appellate Case No. 2014–002488
Opinion No. 5413

Court of Appeals of South Carolina.

Heard March 16, 2016
Filed June 15, 2016

498

Sarah Patrick Spruill and Boyd Benjamin Nicholson Jr., both of Haynsworth Sinkler Boyd, PA, of Greenville, for Appellant.

Frank H. Gibbes, III, of Gibbes Burton, LLC, of Spartanburg, and J. Franklin McClain, of Anderson, for Respondent.

GEATHERS, J.:

In this declaratory judgment action, Appellant West Anderson Water District (the District) seeks review of the circuit court's order interpreting a contract between the District and Respondent City of Anderson, South Carolina (the City) that allowed the City to provide water service to a certain site within the District's boundaries. The District argues the individuals serving on the District's governing board at the time the contract was executed did not have authority to bind successor boards. The District also argues the circuit court's interpretation of the disputed contractual provision substantially compromised the District's central, primary function, i.e., the provision of water and sewer service. We affirm.

## FACTS/PROCEDURAL HISTORY

Prior to February 2002, Duke Energy Corporation (Duke) owned and operated a water system serving wholesale and retail water customers throughout various parts of Anderson County. On February 20, 2002, Duke sold the system's retail component to the City and its wholesale component to the members of the Anderson County Joint Municipal Water System (the Joint System).[1] The Joint System was created pursuant to the Joint Municipal Water Systems Act,[2] S.C. Code Ann. §§ 6–25–5 to –170 (2004), which allows two or more municipalities to form a joint municipal water system to meet

1. Currently named, "Anderson Regional Joint Water System."

2. In 2007, the legislature changed the name of this Act to the "Joint Authority Water and Sewer Systems Act." 2007 Act No. 59, § 1 (effective June 6, 2007).

the needs of their service areas or to create a finance pool. S.C. Code Ann. § 6–25–30 (2004).[3] The Joint System's members include the District; the City; the municipalities of Clemson, Pendleton, and Williamston; Starr–Iva Water and Sewer District; Sandy Springs Water District; Powdersville Water District; Hammond Water District; Homeland Park Water District; Broadway Water and Sewerage District; and Big Creek Water and Sewerage District.

On March 21, 2002, the Joint System entered into an agreement to sell water to its members (the Water Sale and Purchase Agreement).[4] Included in this agreement was a provision in which the District consented to the City providing water service to a facility owned by Michelin North America, Inc. (Michelin) and at least partially located within the District's historical service area. The agreement also included a provision referencing an attached territorial map designating the respective new service areas for each party. The attached territorial map designated the property on which the Michelin facility was located as included within the City's new service area.

In 2012, the District learned Michelin was building a second facility on the property it occupied. Subsequently, the District received a letter from the City stating the City would be providing water service to the second facility and requesting the District to "cease contact with Michelin regarding water service to the site." The District later filed a summons and complaint seeking a declaratory judgment that the City may not provide water service to Michelin's second facility and an injunction against the City's provision of water service to the second facility. The City answered and filed a counterclaim seeking a declaration that it was entitled to provide water service to Michelin's second facility pursuant to the Water Sale and Purchase Agreement.

The circuit court conducted a bench trial and subsequently issued an order declaring that the Water Sale and Purchase Agreement authorized the City to provide water service to

---

3. This provision was amended in 2007.

4. The Water Sale and Purchase Agreement was later amended. However, the parties have not indicated that any amendments are pertinent to the issues in this case.

Michelin's second facility. In its order, the circuit court concluded the District's enabling legislation authorized the District to bind members of future boards to the terms of the Water Sale and Purchase Agreement. The circuit court also concluded the District's delegation of power to the City to provide water service to the Michelin property did not substantially compromise the District's central, primary function. The circuit court denied the District's motion to amend its order pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in finding the Water Sale and Purchase Agreement allowed the City to provide water service to the entire Michelin site?

2. Did the circuit court err in concluding the District's board could bind successor boards to the Water Sale and Purchase Agreement?

3. Did the circuit court err in concluding the District's delegation of its power to the City would not substantially compromise the District's primary function?

## STANDARD OF REVIEW

"Declaratory judgments in and of themselves are neither legal nor equitable. The standard of review for a declaratory judgment action is therefore determined by the nature of the underlying issue." *Kinard v. Richardson*, 407 S.C. 247, 256, 754 S.E.2d 888, 893 (Ct. App. 2014) (citation omitted) (quoting *Campbell v. Marion Cty. Hosp. Dist.*, 354 S.C. 274, 279, 580 S.E.2d 163, 165 (Ct. App. 2003)). "An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). "In an action at law, tried, without a jury, the appellate court's standard of review extends only to the correction of errors of law." *Sherlock Holmes Pub, Inc. v. City of Columbia*, 389 S.C. 77, 81, 697 S.E.2d 619, 621 (Ct. App. 2010) (quoting *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006)).

## LAW/ANALYSIS

### I. Construction of the Water Sale and Purchase Agreement

The District contends the circuit court erred in finding the Water Sale and Purchase Agreement allows the City to provide water service to the entire Michelin site. The District argues the Water Sale and Purchase Agreement allows the City to provide service to only those customers existing when the agreement was executed and Michelin's second facility, a new "customer," did not exist when the agreement was executed. We disagree.

"When interpreting a contract, a court must ascertain and give effect to the intention of the parties." *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 334, 676 S.E.2d 139, 143 (Ct. App. 2009). "To determine the intention of the parties, the court 'must first look at the language of the contract . . . .' " *Id.* (quoting *C.A.N. Enters. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988)).

When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court. *See Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997) ("The construction of a clear and unambiguous contract is a question of law for the court."). Whether an ambiguity exists in the language of a contract is also a question of law. *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation." *Id.* at 623, 550 S.E.2d at 302. "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties." *Id.* at 623, 550 S.E.2d at 303. "The determination of the parties' intent is then a question of fact." *Id.*

Here, the circuit court concluded the Water Sale and Purchase Agreement was ambiguous due to the conflict between the "prefatory clause" in the "Background and Findings" section of the agreement and section 6.02 of the agree-

ment, which discusses territorial boundaries.[5] The prefatory clause states,

> It is presently intended by the parties hereto that the City of Anderson will serve (1) two industries; BASF and Owens–Corning, located within the boundaries of Starr–Iva Water and Sewer District; and (2) the *industrial facilities* of Michelin, which are located within the boundaries of West Anderson Water District. Both Starr–Iva Water and Sewer District and West Anderson Water District consent to the City of Anderson's providing such services to these industries. However, such consent is *strictly limited to* the provision of service to these *named industrial customers* and no further provision of service by the City of Anderson shall be made to any customer located within the boundaries of Starr–Iva Water and Sewer District or within West Anderson Water District without the written consent of such Purchaser.

(emphases added). On the other hand, section 6.02 of the agreement states,

> In order to successfully plan and finance additions to each Purchaser's System, and to avoid future disputes, the parties have agreed upon a Territorial Map of the territories of the parties to this Agreement in order to set out the areas each intends to serve. The Territorial Map is attached hereto as Exhibit D.

These two provisions, considered together, render the contract reasonably susceptible to at least two interpretations, e.g., (1) the District's consent was limited to the customer named in the prefatory clause, Michelin or (2) the District's consent covered water service to *any* customer occupying the Michelin site during the contract's thirty-year term. Therefore, we agree with the circuit court that the contract is ambiguous. *See McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302 ("A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation."). Further, the circuit court properly considered extrinsic evi-

---

5. While the circuit court referenced the original Water Sale and Purchase Agreement, we reference the "Restated and Amended" version of the agreement. There are no material differences between the two versions of the provisions discussed here.

dence to determine the parties' intent. *See id.* at 623, 550 S.E.2d at 303 ("Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties.").

 Moreover, the evidence supports the circuit court's conclusion that the parties intended to authorize the City to provide water service to the entire Michelin site. Steven Wilson, the District's general manager, admitted under cross-examination that the orange-coded area on the territorial map attached to the Water Sale and Purchase Agreement was intended to show the City's service area and the yellow-coded area was intended to show the District's service area.[6] Wilson also admitted that when negotiations for this agreement began, "everybody was concerned about having a map of their service area so everybody would know where each entity was going to serve under" the agreement.

William McCoy, the Co–Project Manager for the Anderson County Water Association (later designated as the Joint System), also testified that the color-coded territorial map accurately portrayed the service areas each member intended to serve at the time they executed the Water Sale and Purchase Agreement. McCoy further stated the City's service area included "both the big part that's in orange[ ] and the three parcels that are shown jutting out at the bottom, one of which is the Michelin property." While the fifth draft of the agreement omitted the reference to the attached territorial map, this reference was added back into all of the remaining drafts at the City's insistence.

Based on the foregoing, the evidence supports the circuit court's finding that the Water Sale and Purchase Agreement allows the City to provide water service to the entire Michelin site. Therefore, we affirm the circuit court's construction of this agreement. *See Pruitt,* 343 S.C. at 339, 540 S.E.2d at 845 ("An action to construe a contract is an action at law reviewable under an 'any evidence' standard.").

---

**6.** The legend on the territorial map indicates that the City's territory is actually coded as pinkish-orange and the pure orange-coded area is the territory of Hammond Water District.

## II. Binding Successor Boards

■ The District maintains the circuit court erred in concluding the District's board could bind successor boards to the Water Sale and Purchase Agreement. We disagree.

■ In *Cunningham v. Anderson County*, this court discussed the test for determining the validity of long-term governmental contracts:

If the term of the contract in question extends beyond the term of the governing members of the municipality entering into the contract, the validity of the contract is dependent on the subject matter of the contract. The general rule is that, if the contract involves the exercise of the municipal corporation's business or proprietary powers, the contract may extend beyond the term of the contracting body and is binding on successor bodies if, at the time the contract was entered into, it was fair and reasonable and necessary or advantageous to the municipality. However, *if the contract involves the legislative functions or governmental powers of the municipal corporation, the contract is not binding on successor boards or councils.*

402 S.C. 434, 443, 741 S.E.2d 545, 550 (Ct. App. 2013) (emphasis added by *Cunningham* ) (quoting *Piedmont Pub. Serv. Dist. v. Cowart*, 319 S.C. 124, 132, 459 S.E.2d 876, 880 (Ct. App. 1995) (*Cowart I* ), *aff'd*, 324 S.C. 239, 478 S.E.2d 836 (1996) (*Cowart II* )), *aff'd in part, rev'd in part on other grounds*, 414 S.C. 298, 778 S.E.2d 884 (2015). This court also highlighted the additional holding in *Cowart I* that the law governing municipal corporations applies to determining the scope of a special purpose district's power to enter into contracts. *Id.* at 442, 741 S.E.2d at 549. The court further held:

[W]here the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council[,] *unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term,* no power of the council to do so exists, *since the power conferred upon municipal councils to exercise legislative or governmental functions is conferred to be exercised as often as may be found needful or politic,* and the council presently holding such powers is vested with no discretion to

circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors.

*Id.* at 443–44, 741 S.E.2d at 550 (emphasis added by *Cunningham* ) (quoting *Cowart I,* 319 S.C. at 132, 459 S.E.2d at 880–81). In determining whether a local governing body is exercising a governmental, versus proprietary, function, " 'the true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired.' " *Id.* at 444, 741 S.E.2d at 550 (emphasis omitted) (quoting *Cowart I,* 319 S.C. at 132–33, 459 S.E.2d at 881). Further, "South Carolina's courts have repeatedly held that a municipality's provision of water service to residents and non-residents is a governmental function." *City of Beaufort v. Beaufort–Jasper Cty. Water & Sewer Auth.,* 325 S.C. 174, 179, 480 S.E.2d 728, 731 (1997).

 As noted in *Cunningham,* there is an exception to the rule that contracts involving a governmental function may not bind successor boards "when 'enabling legislation *clearly authorizes* the local governing body to make a contract extending beyond its members' own terms.' " *Id.* at 445, 741 S.E.2d at 551 (emphasis added in *Cunningham* ) (quoting *Cowart II,* 324 S.C. at 241, 478 S.E.2d at 838).

### A. Enabling Legislation

The District's enabling legislation is Act No. 78 of 2001, which is codified at sections 33–36–1310 to –1370 of the South Carolina Code (2006). For a complete understanding of the issue, we set forth Section 1 of Act No. 78, which states,

Act 1030 of 1964 was enacted to take advantage of federal funding available through the Farmer's Home Administration Act to provide for the growing need for utility and other services, especially in rural areas. Since that time, the availability of the funding has diminished, and federal and state funding are more often provided from additional sources. The General Assembly finds, under certain conditions, that the not-for-profit corporations organized under Act 1030 of 1964, for the purposes of providing water services, should be granted the right to elect to become public bodies politic and corporate for reasons including, but not limited to, the following:

(1) the opportunity to receive funding, loans, and grants from other sources such as the State Revolving Fund will be increased or enhanced;

(2) *the right to participate in a joint municipal water system as authorized under Chapter 25, Title 6 of the 1976 Code will be afforded*; and

(3) the cost of borrowing money for infrastructure construction and expansion will be lower and growth demands more economically met.

(emphasis added). Section 2 of this act added sections 33–36–1310 to –1370 to the South Carolina Code. Notably, section 33–36–1310(A) states, in pertinent part,

*For the exclusive purpose[ ] of participating in a joint municipal water system as authorized under Chapter 25, Title 6*, a nonprofit corporation incorporated for the purposes of providing water or water and sewer services, pursuant to the provisions of this chapter may elect, by resolution, to become a public service district, a public body politic and corporate.

(emphasis added).

Here, the circuit court concluded that Act No. 78 clearly authorized the District to enter into the Water Sale and Purchase Agreement by granting public service districts the power to "enter into contracts of short or long duration" and to "make contracts of all kinds and execute all instruments or documents necessary or convenient to carry out the business of the district." *See* S.C. Code Ann. § 33–36–1360(A)(9) & (11) (2006).[7] The circuit court also referenced the amendment by Act No. 78 to the Joint Municipal Water Systems Act, Act No. 82 of 1983, S.C. Code Ann. § 6–25–5 to –170 (2004), to allow

---

7. Section 33–36–1360(A) states, in pertinent part,

The newly converted district has all rights and powers of a public body politic and corporate of this State including, without limitations, all the rights and powers necessary or convenient to carry out and effectuate its purposes including, but not limited to, the following rights and powers to ... (9) enter into contracts of short or *long duration*; [and] ... (11) make contracts of all kinds and execute all instruments or documents necessary or convenient to carry out the business of the district ....
(emphasis added).

newly converted public service districts to become members of a joint water system.[8] Section 1 of the Joint Municipal Water Systems Act states,

The General Assembly of this State finds and determines:

(a) That the present availability of water and even more so in the years to come is very crucial to the welfare and needs of the people of the State of South Carolina, and is a matter of great public concern; that no longer is the impounding, treatment, production, transmission, distribution, sale, and service of water peculiar to the needs and welfare of a particular municipality, but such is of great importance to the people of this State as a whole.

(b) That the development of the State and its maintenance and growth depends in large measure on the availability of adequate and safe water supplies and water sources; and that the impounding, production, treatment, transmission, distribution, sale, and service of water by the municipalities of this State *through joint action of certain municipalities* who choose to do so is of great importance to the people of the State and to the areas of the State where such facilities are present.

(c) *The creation of joint municipal water systems* to provide and sell water to its members and to other municipalities who are not members, but who sell and serve water when approved by the governing body of each member; and *to provide for the joint planning, financing, development, ownership, operation, and the issuance of revenue bonds* by

8. *See* S.C. Code Ann. § 6–25–20(h) (2004) (defining "Member of a joint system" as "those municipalities whose governing bodies have agreed (1) to create a joint municipal water system to undertake the impounding, acquisition, treatment, production, transmission, distribution, service, and sale of water to a municipality which is a member of the system and other municipalities, and persons which are not members when approved by the governing body of each member or (2) to create a joint municipal water system for the purpose of creating a financing pool. A joint municipal water system created for the purpose of creating a financing pool may have as nonvoting members nonprofit corporations created pursuant to Chapter 36 of Title 33; however, a nonprofit corporation which has become a public service district pursuant to Article 8 of Chapter 36 of Title 33 is a voting member.").

such joint municipal water systems is for a public use and for a public purpose.

1983 S.C. Acts 138 (emphases added).

In discussing the Joint Municipal Water Systems Act, the circuit court highlighted section 6–25–128, which states that contracts concerning the sale of

capacity and output from a project may extend for a period *not exceeding fifty years* from the date of the contract and may be renewable and extended upon terms as the parties may agree for not exceeding an additional fifty years; and the execution and effectiveness is not subject to any authorizations or approvals by the State or any agency, commission, or instrumentality or political subdivision of them.

(emphasis added).

### B. Authorization for the Water Sale and Purchase Agreement

As previously stated, section 33–36–1360(A)(9), part of the District's enabling legislation (Act No. 78 of 2001), grants public service districts the power to "enter into contracts of short or long duration." Further, one of the express purposes of Act No. 78, of which section 33–36–1360(A)(9) is a part, is to afford nonprofit corporations converting to public service districts the right to participate in a joint municipal water system as authorized under the Joint Municipal Water Systems Act, of which section 6–25–128 is a part. Section 6–25–128 allows contracts concerning the sale of capacity and output from a project to extend for a period not exceeding fifty years from the date of the contract. We find it necessary and reasonable to consider both Act No. 78, specifically section 33–36–1360(A)(9), and the Joint Municipal Water Systems Act, specifically section 6–25–128, together in determining whether the District's enabling legislation "*clearly authorizes* the [District] to make a contract extending beyond its [board] members' own terms." *Cunningham*, 402 S.C. at 445, 741 S.E.2d at 551.

When we consider these interrelated legislative acts together, it is clear that authorizing a joint water system to enter into a fifty-year contract for the sale of capacity requires the same authorization for those public service districts participating in the joint system. Therefore, the circuit court correctly

reasoned that if a joint water system is authorized by section 6–25–128 to enter into a contract for a term extending beyond its board members' own terms, the members of the joint water system, such as the District, "must be able to do the same."

## III. Delegation of Power

 The District asserts the circuit court erred in concluding the delegation of power given to the City to serve the Michelin site did not substantially compromise the District's central, primary function. We disagree.

In *Beaufort,* our supreme court examined a contract between the Beaufort–Jasper County Water and Sewer Authority (the Authority) and the City of Beaufort, as well as a similar contract between the Authority and the Town of Port Royal (the Town), for the Authority's sale of water to the City of Beaufort and the Town. 325 S.C. at 177, 480 S.E.2d at 730. These contracts included a provision prohibiting the Authority from selling

> water to be used by persons, private corporations or other municipalities ... in Beaufort *County*, without the consent of Beaufort and the Town of Port Royal ... unless said City and/or Town refuse or neglect to render such service to such persons, private corporations or other municipalities within a reasonable time after the same has been demanded.

*Id.* (emphasis added). Referencing this provision in each contract as the "Contested Clauses," the court stated that this right of first refusal for all of Beaufort County "hamper[ed] [the] Authority's discretion." *Id.* at 182, 480 S.E.2d at 732. The court affirmed the circuit court's ruling that the Contested Clauses constituted an unlawful delegation of governmental power "both because the Contested Clauses bind future governing boards *and,* more importantly, because they give away too much power in themselves." *Id.* at 182, 480 S.E.2d at 732–33 (emphasis added).

 We infer from this language an additional hurdle for the proponent of a long-term governmental contract—the proponent must show not only that enabling legislation clearly authorized the contract to bind successor boards but also that any delegation of authority in the contract does not relinquish too much power. As to what constitutes too much power,

footnote 4 in the *Beaufort* opinion is instructive: "We do not speak to more minor delegations of power, but simply find that where the *central, primary* function of a special purpose district is *substantially compromised* by a contract, the delegation of power may be invalid or unlawful." *Id.* at 180 n.4, 480 S.E.2d at 732 n.4 (second emphasis added).

Here, the circuit court distinguished *Beaufort* from the present case by characterizing the scope of the District's consent to the City's provision of water to the Michelin site as "circumscribed." The circuit court correctly noted the territorial map attached to the Water Sale and Purchase Agreement demonstrated that the Michelin site comprised "only a small part of the District's service area." Based on this analysis, the circuit court concluded the District's consent was a "minor delegation of governmental authority" and did not "'substantially compromise' its discretion or ability to function." *Id.* at 180 n.4, 480 S.E.2d at 732 n.4. We agree.

The City also distinguishes *Beaufort* from the present case. The City argues that in *Beaufort*, the supreme court was concerned with the Authority's delegation to the City and the Town of the *power to decide* when the Authority was allowed to "provide water to anyone in its own service area." *Id.* at 182, 480 S.E.2d at 732. The City contends that in the present case, the District's discretion was not impaired because the District exercised its power to decide who would provide water to the Michelin site for the limited term of the Water Sale and Purchase Agreement by consenting to the City's service to the site. We agree.

The District compares the disputed contractual provision in the present case to a contract provision invalidated by the circuit court in *G. Curtis Martin Investment Trust v. Clay*, 274 S.C. 608, 266 S.E.2d 82 (1980). In *Clay*, our supreme court upheld the circuit court's invalidation of a provision granting a private individual the right to approve "large uses" of a sewer system that had been previously sold by that individual to the North Charleston Sewer District. *Id.* at 610–13, 266 S.E.2d at 83–85. This veto power was to last "until such time as the District connect[ed] the system with the District's main line." *Id.* at 610, 266 S.E.2d at 84. The court stated the district

commissioners' "abdication ... of their statutory and constitutional responsibility to act for the public welfare to a private party who ha[d] no duty to give the public welfare any deliberation was improper." *Id.* at 612, 266 S.E.2d at 84–85. The court further stated, "The police power of a corporate political entity cannot be exercised for private purposes or for the benefit of particular individuals or classes." *Id.* at 612, 266 S.E.2d at 85.

The *Clay* court held the commissioners themselves were required to act on applications for connection to their system rather than allowing the private individual to do so:

> Act 1768 creating the District, though it does authorize discretionary contracting, does not allow the District to delegate away those powers and responsibilities which give life to it as a body politic. A municipal corporation or other corporate political entity created by state law, to which police power has been delegated, may not divest itself of such power by contract or otherwise.

*Id. Clay* is distinguishable from the present case because here, the District has not delegated its decision-making authority to a private person or entity, or even another public entity, but rather it has delegated the function of providing water and sewer *service* to the Michelin site to the City for a limited period of time.

Based on the foregoing, we affirm the circuit court's conclusion that the District's consent did not substantially compromise its discretion or ability to function.

## CONCLUSION

Accordingly, the circuit court's order is

**AFFIRMED.**

HUFF and KONDUROS, JJ., concur.