13620

LESLIE v. SOUTHERN PAVING CONST. CO.

(169 S. E., 139)

1931.

*Messrs. Herbert & Dial,* for appellant,

*Messrs. McDonald, Macaulay & McDonald* and *Tompkins & Gary,* for respondent,

April 12, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries suffered by plaintiff, on September 11, 1930, while in the employ of the defendant, a paving and construction company engaged in road building near the City of Spartanburg.

It was alleged "that on or about said date plaintiff, while in the performance of his duties, was walking along the left hand side of the road being constructed. That defendant's scraper being drawn by defendant's tractor and operated by defendant, its agents and servants, came up behind plaintiff and by reason of a defective steering gear on said scraper,

which prevented the operator thereof from properly controlling or operating it, caused the injury to plaintiff hereinafter set out. That at the time of coming up behind plaintiff the blade of the scraper struck a stone or other hard object, and on account of the defective steering gear which prevented the operator from controlling it, caused the wheel of the scraper to be thrown against plaintiff, breaking and crushing his left foot"; and that the injuries so received were due to the careless and willful acts of the company, in that, *inter alia,* it "failed to provide safe machinery, there being a defective steering gear on the scraper and the defendant could have by the use of reasonable care determined that the said mechanism was defective." The company, by its answer, denied responsibility for the alleged injuries, and pleaded the defenses of contributory negligence and assumption of risk. On trial of the case the jury found for the plaintiff $1,500.00.

The following question, the decision of which will dispose of the appeal, is raised by the exceptions: Did the trial Judge commit error in refusing to direct a verdict for the defendant on the grounds (1) that there was no evidence of actionable negligence; (2) that the only reasonable inference to be drawn from the testimony was that plaintiff contributed to his injury by his own negligence as the proximate cause thereof; and (3) that no inference could be drawn from the testimony other than that the plaintiff was injured as a result of risks which he had assumed?

As to the first ground, the appellant takes the position that, even if the steering gear on the scraper was removed by some employee whose act was the act of the defendant, the only reasonable inference to be drawn from the testimony is that the absence of the steering apparatus had nothing whatever to do with the accident.

The plaintiff testified, and for the purpose of the motion his testimony is taken to be true, that the defendant, in preparing the roadbed for the pouring

of the cement, maintained two crews—one which did the rough grade work, the building and shaping of the roadbed at approximately the desired grade, and one which did the finishing or fine grade work, the changing or reshaping of the rough-graded roadbed to the exact grade required; that at the time he was injured he was working for the defendant as a fine grade foreman, having had about ten years' experience in that class of work; that he had no control over the work being done by the rough grade crew, except that he would check up on it for reasons having to do with his own work; that it was no part of his duty to inspect the machinery used in the rough grading, but that this was the duty of the superintendent, Murphy, who was also foreman in charge of the rough grade crew; that plaintiff's duties were inspecting the grades, setting the forms, etc., preparatory to the pouring of the concrete; that the engineer of the State Highway Department would set stakes every fifty feet and the forms would have to be level with the tops of those stakes; and that, after the rough grading was approximately complete, the witness would go ahead of his crew to inspect the stakes and the rough grades. He also testified that on September 11, 1930, as was his custom, he went ahead of his crew, up to where the rough grading was being done and was approximately finished, for the purpose of checking the stakes, etc., when the rough grading crew came along with a tractor drawing a scraper, the machinery used by that crew in doing such work; that when the tractor passed him, going in the same direction, it was about five or six feet from him to his right, and that, just as the scraper was opposite to and about four feet from him, it jumped in his direction, its wheel striking and knocking him down and breaking four bones in his foot. With regard to the machinery used in doing the rough grade work, he testified that one man sat on the tractor in front to guide it, and another on the rear of the scraper for the purpose of guiding and controlling it; that there was a coupling space

between the scraper and the tractor some feet in length, with a stiff tongue fastened in with a chain; that by means of the steering gear on the scraper the man sitting at the rear was able to shift it from one side to the other, although the tractor was going ahead in a straight line; that there were stones in the ground where this particular grading was being done, and, should the blade of the scraper strike one of these, it would cause the machine to jar and jump—though he never saw a scraper jump as much as this one did at that time—and that after the accident he saw a stone lying at or near the place where he was injured; and that at the time of his injury he did not know the steering gear of the scraper had been removed and it was being operated without such apparatus.

J. E. Roseman, a witness for the plaintiff, testified that he was material foreman on the same job at the time plaintiff was injured; that the road scraper being used for the rough grading work was a Ryan, model 10-K grader, which was "pulled by a tractor, with the end of a tongue"; that when such grader leaves the factory it is equipped with a steering apparatus, consisting of a "wheel attached to a long rod in front of the machine and then there is what is called a universal joint, and that runs from the tongue down into the steering box that controls the tongue"; that he was out at the place where this grading was being done on the afternoon before plaintiff was hurt and saw two laborers raising the tongue from the ground in order to couple the road machine to the tractor, which was not necessary when the machine was equipped with a steering gear; that, when his attention was attracted to what they were doing, he saw that "the spring from the steering gear rod to the front end of the box was off the machine—this big spring and the rod"; that the effect of the absence of this rod would be that the operator at the rear of the machine would have no control over steering it at all, there being nothing to hold it except the friction in the steering box, in front, between the gears,

and that in such condition the scraper is more apt to jump violently than if equipped with a steering gear, should it come in contact with some obstruction sufficiently embedded in the ground to resist the weight of the machine; that the witness carried the plaintiff to the hospital after he was injured, and, upon his return to report to the superintendent what he had done, saw that the tongue of the road machine was on the ground just as it was the day before, and that, while he did not then notice the steering gear, had it been on the scraper, the tongue would have stood up just as it did when the machine came from the factory.

B. R. Beckham, a witness for the plaintiff, testified that he had had a great deal of experience in the building of roads, as county commissioner in Fairfield County, and was familiar with the operation of tractors and road scrapers; that he had tried to run a road machine without a steering gear, and, if the load is heavy, a machine so operated will jump farther than one equipped with such gear, when it hits an object embedded in the ground, for the reason that the steering gear on the scraper serves as a brace and operates to hold the machine and to keep it in line. There was also some testimony to the effect that the absence of the steering gear affected the rigidity of the wheels of the machine, from which it would be more likely to jump should it strike some solid substance embedded in the ground.

A reasonable inference to be drawn from this testimony was that the scraper, without the steering gear, was not a safe machine for the work that was being done; that plaintiff at the time of his injury was where he had a right to be in the line of the duties required of him; and that the injury inflicted was due to defendant's negligence in failing to furnish him a safe place to work in connection with the condition of the machine there used. The testimony required the submission of the question of actionable negligence to the jury.

As to the second ground, appellant contends that plaintiff contributed to the accident as a proximate cause thereof by his own negligence in walking too close to the road scraper, a machine weighing about five tons. The plaintiff testified that he knew something of such machines and had observed road scrapers jump when they struck an object in the road, but that he had never seen one "jump as much as this one did"; and that, while he was about four feet from the scraper as it passed him, he did not know that the steering gear had been removed, and so after the blade, in passing, missed him by several feet, he did not apprehend any danger at all from the machine. The testimony was also to the effect, as we have indicated, that at the time of the accident he was where his duties required him to be. Whether the plaintiff was guilty of contributory negligence was, under the testimony, a question of fact for the jury.

As to the third ground, appellant argues that it was incumbent on the plaintiff to show that the alleged negligence was a breach of some duty of the employer for which it was liable, and that he failed to show by the testimony who took off the steering apparatus or that the defendant knew anything about it. The answer of the respondent is that the "negligent act complained of is not that of removing the steering gear but is that of not operating a safe machine to do the work"; and that the burden was upon the defendant to show, by way of defense, that it was without knowledge, and could not have known by the exercise of due diligence and care, that the machinery furnished by it was defective. We are in accord with this position. See *Branch v. Railway Company*, 35 S. C., 405, 14 S. E., 808; *Grainger v. Railway*, 101 S. C., 73, 85 S. E., 231. "As the law imputes to the master the knowledge of the danger, even though latent, in the use of the instrumentalities with which he provides his servant, he cannot escape liability by showing he was ignorant of this fact, unless he should

further show that by the use of due diligence he could not have discovered the danger." *Chase v. Electric Company,* 64 S. C., 212, 41 S. E., 899, 901. "The general rule is that the servant assumes such risks as are ordinarily incident to the service, but does not assume extraordinary risks unless they are known to and appreciated by him, or are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." *Tyner v. Railway Company,* 149 S. C., 89, 146 S. E., 663, 670. See, also, *Barnhill v. Manufacturing Company,* 112 S. C., 541, 100 S. E., 151; *Berry v. Dillon Mills,* 120 S. C., 333, 113 S. E., 348; *Gowns v. Watts Mill,* 135 S. C., 163, 133 S. E., 550. And the servant does not ordinarily assume the negligence of the master in not providing safe appliances (*Blount v. Railway,* 94 S. C., 410, 78 S. E., 24), or the risk relative to furnishing a safe place for him to work (*Grainger v. Railway, supra*). As to the contention that the negligence, if any, resulting in plaintiff's injury was that of a fellow servant: It is well settled that the master cannot delegate to another his duty to furnish the servant a safe place to work and safe tools and machinery with which to do the work. *Lester v. Railway,* 93 S. C., 395, 76 S. E., 976.

In 39 C. J. at page 594, the rule is thus stated: "Personal duties of a master cannot be delegated by him to a servant so as to relieve himself from liability on the ground that the negligence in regard thereto was that of a fellow servant. * * * Such duties are usually termed 'nondelegable duties,' and the servant upon whom they are imposed is, in the exercise of such duties, a representative of the master or a vice principal, and the grade, rank, or title of such servant is immaterial; moreover, the liability of the master is not affected by the rank of the injured servant. Among the nondelegable duties referred to are furnishing a safe place to work, and safe tools, machinery, and appliances."

We are of opinion that the trial Judge committed no error in refusing the motion for a directed verdict.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.