14974

NUCKOLLS v. GREAT ATLANTIC & PACIFIC TEA CO.

(5 S. E. (2d), 862)

April, 1939.

*Messrs. J. C. Long* and *Arthur Rittenberg,* for appellant,

*Mr. Paul M. Macmillan* for respondent,

December 5, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought for the recovery of damages for personal injuries, and resulted in a judgment of nonsuit. The complaint alleges that the plaintiff was employed as a salesman of the defendant in one of its stores in the city of Charleston; that the defendant was an "employer" within the meaning of the South Carolina Workmen's Compen-

sation Act, Code Supp., 1936, § 7035-1 et seq., at the time the plaintiff suffered his alleged injury, and the plaintiff was an "employee" within the meaning of the Act; that the defendant had rejected the provisions of the Workmen's Compensation Act, and was therefore liable in damages for any actionable negligence resulting in injury to the plaintiff, without the benefit of any of the common-law defenses.

While the complaint contains general allegations of negligence on the part of the defendant in failing to furnish a safe place to work, and suitable appliances, these allegations are limited by specific allegations which charge the defendant with negligence in maintaining a slippery floor immediately in front of its refrigerator—made slippery by allowing water to leak therefrom upon the floor, and by allowing waste food products to accumulate thereon, which rendered it dangerous to walk upon; and failure to make proper inspection. It is alleged that the plaintiff on July 8, 1937, while acting as manager of the store, slipped on the floor and fractured his ankle.

The answer admitted the allegation that the defendant had rejected the provisions of the South Carolina Workmen's Compensation Law; admitted the employment of the plaintiff as acting manager, and alleged that in such capacity the plaintiff was solely responsible for the control and management of the store. All other allegations of the complaint are denied.

The testimony for the plaintiff tends to show that he had been employed as a clerk in the defendant's store for about seventeen months prior to his injury. That the manager of the store was away on his vacation; that the plaintiff, during his absence, had taken his place as acting manager in control of the store, and had been serving in this capacity for about one week prior to the time he says he was injured. While acting as manager his salary was increased from seventeen dollars per week to twenty-five dollars per week. He was standing in front of the refrigerator serving a customer with cheese, which he had wrapped, and was start-

ing back to the front of the store to deliver the package when he slipped on the floor and fell, fracturing his ankle. This occurred about three o'clock in the afternoon of July 8, 1937.

The testimony further shows that the drain pipe of the refrigerator was stopped up, and that when the ice melted from the coils the water did not flow upon the floor, but dripped down to the bottom of the refrigerator upon the lettuce, celery, and other vegetables placed there. In the course of serving customers, these vegetables were taken from the refrigerator throughout the day, and when removed they were wet, and water would drip from them upon the floor. Butter and other products would also fall to the floor in small quantities in the course of serving the trade. The floor was swept and cleaned up from time to time during the day by a negro delivery boy, under the direction of the plaintiff, and on the day in question was cleaned at nine o'clock in the morning, and again at twelve o'clock noon.

One other clerk worked in the store with the plaintiff.

The plaintiff testified that he did not know what he slipped on; that the floor was slippery and slimy—all of which he knew because he said this condition had prevailed for months; that the defective condition of the refrigerator had been reported to the defendant, and that a Mr. Sole, who was the supervisor of all of the defendant's stores in the city of Charleston, had inspected it. It was repaired, but soon became defective again. Although Mr. Sole had general supervision of all the stores in Charleston, the plaintiff at the time of his injury was in the actual control as acting manager of the particular store in which he was hurt, and had been vested with and exercised this authority for one week prior to the accident. The plaintiff also said that during the course of the morning on which he was hurt, he dropped butter on the floor in front of the refrigerator, which he did not clean up. The negro porter testified that after the accident, he examined the floor where the plaintiff had fallen and found butter on the floor in front of the

refrigerator, some of which had melted, and that the floor was damp.

We shall first pass upon the plaintiff's contention that an employer having rejected the provisions of the Workmen's Compensation Law, the burden is not upon the employee to prove negligence. The argument substantially is that the employee need prove only that he sustained injuries by accident arising out of and in the course of his employment.

The plaintiff relies particularly upon Section 7035-15 of the Workmen's Compensation Act, which provides:

"An employer who elects not to operate under this article shall not, in any suit at law instituted by an employee subject to this article to recover damages for personal injury or death by accident, be permitted to defend any such suit at law upon any or all of the following grounds:

"(a) That the employee was negligent.

"(b) That the injury was caused by the negligence of a fellow employee.

"(c) That the employee has assumed the risk of the injury."

Hence our Act, which is elective, deprives the employer who does not elect to come thereunder, of the common-law defenses of assumption of risk, fellow-servant rule, and contributory negligence.

However, common-law recovery against an employer who elects to remain outside the Workmen's Compensation Act, is still predicated upon actionable negligence. Even with the defenses removed, the employee has the burden of proof on the issue of the employer's negligence. Such an employee, although benefiting by the taking away of the defenses enumerated, must still prove facts showing actionable negligence upon the part of the employer, and, proceeding at common law, prove his common-law right to recovery. The statute purports only to deprive the non-assenting employer of certain named defenses, and it was not the intention of the Legislature, as we view it, in addition to abrogating those defenses, to establish a statu-

tory right of recovery based only on the fact that the employee sustained injuries "by accident arising out of and in the course of his employment."

The principle is well understood, and generally followed, that negligence on the part of the employer, as the proximate cause of the injury, is an essential to a recovery by an employee in an action at law, notwithstanding the employer has not come within the provisions of the Act. 71 C. J., Sec. 1509; *Palmer v. Town of Sumner*, 133 Me., 337; 177 A., 711; 97 A. L. R., 1292; *Newbern v. Great Atlantic & Pacific Tea Co.*, 4 Cir., 68 F. (2d), 523; 91 A. L. R., 781; *Mammott v. Worcester Consol. Street R. Co.*, 228 Mass., 282, 284; 117 N. E., 336; *Wendzinski v. Madison Coal Corp.* 282 Ill., 32; 118 N. E., 435; *Kelley v. Brown*, 262 Mich., 356; 247 N. W., 900; *High Splint Coal Co. v. Baker*, 247 Ky., 426, 428; 57 S. W. (2d), 60.

■ Regarding the presumption against change of the common law by a statute, it is stated in 25 R. C. L. 1054, that it is not presumed that the Legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; that it is rather to be presumed that no change in the common law was intended unless the language employed clearly indicates such an intention; that the rules of the common law are not to be changed by doubtful implication, or overturned except by clear and unambiguous language.

The question remains to be considered, whether under the evidence the plaintiff was entitled to have his case submitted to the jury on the question of the defendant's negligence as the proximate cause of his injury.

The testimony permits of no other reasonable inference but that at the time of the accident the plaintiff, as acting manager and in full charge and control of the store in which he worked, was a vice-principal of the defendant.

■■ It is the duty of the master to furnish the servant a reasonably safe place to work and reasonably safe and suitable tools and appliances. These duties are

positive, absolute and personal. They are termed non-delegable duties, and the master cannot evade liability by delegating their performance to another. And if they are delegated, the agent to whom their performance is entrusted, whoever he may be, and notwithstanding he may be a fellow-servant in other respects, is a vice-principal or representative of the master. In other words, he is the master's *alter ego*, whose negligence is that of the master and for which the master is answerable where a third person, whether an employee or a stranger, is injured thereby, where the injured person has not been negligent, and has not assumed the risk. *Jenkins v. Richmond & D. R. Co.,* 39 S. C., 507; 18 S. E., 182; 39 Am. St. Rep., 750; *Calvo v. Charlotte C. & A. R. Co.,* 23 S. C., 526; 55 Am. Rep., 28; *Gunter v. Graniteville Mfg. Co.,* 18 S. C., 262; 44 Am. Rep., 573; *Watts v. Hermitage Cotton Mills,* 95 S. C., 138; 78 S. E., 798; *McBrayer v. Virginia-Carolina Chem. Co.,* 89 S. C., 387; 71 S. E., 980; *James v. Fountain Inn Mfg. Co.,* 80 S. C., 232; 61 S. E., 391; *Leslie v. Southern Paving Const. Co.,* 169 S. C., 414; 169 S. E., 139; 39 C. J., 596.

But we are not here concerned with an injury charged to the defendant by a third person or an ordinary employee. The injury complained of was suffered by one who, under the evidence, was a vice-principal or representative of the master. It affirmatively appears that there was no inherent defect in the floor in front of the refrigerator. And it is clear that if the floor became slippery by reason of water and waste food products falling thereon, it was just as much the duty of the plaintiff as manager to eliminate this risk and to maintain the floor in a reasonably safe condition as it was the duty of the defendant.

If the injury the plaintiff received was not purely accidental in the ordinary course of the day's business, then it appears that it resulted from the presence of dampness and butter upon the floor, placed there by the plaintiff himself. If the defendant is chargeable with negligence in any of the respects alleged, such negligence on its part arose directly

out of the conduct of its vice principal and representative. It was the plaintiff's duty to maintain the floor in front of the refrigerator in a reasonably safe condition, and he cannot be permitted to recover for the injury sustained by him, due to the negligent conduct of the defendant when the plaintiff himself, the *alter ego* of the defendant, was the person whose conduct tends to impose liability upon the defendant.

The same principle was held to be applicable in *Cline v. Southern R. Co.*, 101 S. C., 493; 86 S. E., 17, 18. That case fell within the well recognized doctrine that an employer may delegate to the servant the preparation for his own place in which to do his work, and that the master may relieve himself of liability by entrusting to his servant the duty of maintaining the place of work in a reasonably safe condition, such as the servant is competent to undertake. In the *Cline case* the plaintiff, a bridge foreman in charge of repair work upon a trestle, was injured by slipping on a lump of coal lying on the ground. A nonsuit was granted. Affirming a judgment for the defendant, the Court said: "The plaintiff went to a place used for hauling coal, and where coal might be expected to lie on the ground. It was his duty to have the place prepared for the work, and if it was necessary to remove the coal in order to make the place safe for the work, it was the plaintiff's fault that the coal was left there. It was his right to stop the hands from other work and use them on the bent, if more force was necessary, and he did not do it. He cannot hold the master for not doing that which it was his duty as the representative of the master to do."

Recovery in the Cline case was not defeated by reason of the contributory negligence of the man injured, but because there was no negligence shown on the part of the master. The effort to make the master responsible for the condition of the ground on which the foreman worked was unsuccessful, as there was no duty on the master in this regard.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.