741 S.E.2d 545

**Michael CUNNINGHAM, Appellant,**

v.

**ANDERSON COUNTY, Respondent.**

**Appellate Case No. 2011–194209.**

**No. 5072.**

Court of Appeals of South Carolina.

Heard Nov. 14, 2012.
Decided Jan. 16, 2013.
Withdrawn, Substituted and Refiled Feb. 27, 2013.
Rehearing Denied Feb. 27, 2013.
Rehearing Denied April 18, 2013.

436

John S. Nichols, of Bluestein, Nichols, Thompson & Delgado, LLC, of Columbia, and Brian P. Murphy, of Brian Murphy Law Firm, PC, of Greenville, for Appellant.

William W. Wilkins and Kirsten E. Small, of Nexsen Pruet, LLC, of Greenville, and Tanya A. Gee, of Nexsen Pruet, LLC, of Columbia, for Respondent.

Michael E. Kozlarek and Ray E. Jones, of Parker Poe Adams & Bernstein, LLP, of Columbia, for Amicus Curiae South Carolina City and County Management Association.

GEATHERS, J.

In this breach of contract case, Appellant Michael Cunningham seeks review of the circuit court's order granting summary judgment to Respondent Anderson County (the County) on all of Cunningham's causes of action. Cunningham challenges the circuit court's conclusion that his employment contract with the County was void. Cunningham also challenges the circuit court's conclusions that (1) he could not avail himself of the public policy exception to the at-will employment doctrine, and (2) his accrued sick leave did not constitute "wages" under the South Carolina Payment of Wages Act.[1] We affirm in part, reverse in part, and remand.

---

1. S.C.Code Ann. § 41–10–10 to –110 (Supp.2012).

### FACTS/PROCEDURAL HISTORY

The County operates under a Council–Administrator form of government, in which the Council employs an administrator to serve as the administrative head of the County's government. The administrator is responsible for the administration of all departments over which the Council has control.[2] The Council's members are elected for two-year, non-staggered terms.[3] Three of the Council's seven members were not reelected in the November 4, 2008 general election.[4]

During its November 18, 2008 meeting, the lame-duck Council (the 2008 Council) amended the previously-noticed agenda to vote on a severance contract with the then-current administrator, Joey Preston. This contract was drafted in anticipation of the termination of his employment. The 2008 Council voted 5–2 in favor of the contract.[5] During the same meeting, the 2008 Council voted 5–2 in favor of a "Master Employment Agreement" appointing Cunningham, then the assistant administrator, as the new administrator for a three-year term.[6] On November 19, 2008, Cunningham signed the contract, which provided for a severance package in the event he was later terminated "without cause."

On January 6, 2009, the new Council (2009 Council) met and passed a resolution condemning the 2008 Council's actions in entering into the severance contract with Joey Preston and

2. *See* S.C.Code Ann. § 4–9–620 (1986) (describing office of the administrator).

3. *See* S.C.Code Ann. § 4–9–610 (1986) (requiring council members to be elected in the general election for terms of two or four years "commencing on the first of January next following their election").

4. The seven members were Michael Thompson, Bob Waldrep, Cindy Wilson, Larry Greer, Gracie Floyd, Bill McAbee, and Ron Wilson. Thompson, Greer, and McAbee were not reelected in the November 2008 election.

5. The five members voting in favor of the contract, which provided for a $1 million dollar payment to Preston, included the three "lame-duck" members.

6. Likewise, the five members voting in favor of this contract included the three lame-duck members.

entering into the employment contract with Cunningham.[7] Subsequently, the 2009 Council's ad hoc personnel committee presented Cunningham with a written at-will employment contract based on the position of the 2009 Council that Cunningham's November 19, 2008 employment contract was no longer valid.[8] After reviewing the new contract, Cunningham wrote a letter to the members of the 2009 Council, dated January 27, 2009, stating that he saw no need to sign a contract for at-will employment as the 2009 Council already viewed his employment as at-will.

At its February 3, 2009 meeting, the 2009 Council voted to terminate Cunningham's employment, stating that he had rejected the 2009 Council's two separate proposals for an at-will employment contract.[9] On February 9, the ad hoc personnel committee met with Cunningham in executive session to discuss his employment. Cunningham offered to "enter into an agreement through the end of the term of the [2009] [C]ouncil." At Cunningham's request, the 2009 Council conducted a public hearing on March 2, 2009 concerning his termination. At the conclusion of the hearing, the 2009 Council once again voted to remove Cunningham from his position as Administrator.

Cunningham filed this action on April 22, 2009, asserting causes of action for Breach of Contract, Wrongful Discharge, and violation of the Payment of Wages Act. The parties engaged in discovery on the breach of contract claim but agreed to postpone discovery on the wrongful discharge claim until after the contract claim had been resolved. Subsequently, Cunningham filed a motion for summary judgment as to the breach of contract claim. The County filed a cross-motion for summary judgment as to all three causes of action in Cunningham's complaint. Cunningham then filed a second

7. The members of the 2009 Council were Eddie Moore, Bob Waldrep, Cindy Wilson, Gracie Floyd, Tommy Dunn, Ron Wilson, and Tom Allen.

8. This committee consisted of Bob Waldrep, Tommy Dunn, and Eddie Moore.

9. The record does not indicate when the ad hoc personnel committee made the second proposal, which was for a demotion to the Assistant Administrator position, but with a higher salary than what Cunningham previously received in that position.

motion for summary judgment as to his claim under the Payment of Wages Act. The circuit court denied Cunningham's summary judgment motions and granted the County's summary judgment motion.

In granting the County's summary judgment motion, the circuit court concluded that Cunningham's 2008 contract was void and could not bind the 2009 Council. The circuit court also concluded that Cunningham's claim for accrued sick leave was not compensable under the Payment of Wages Act because (1) the County did not have a policy of compensating its at-will employees for accrued sick leave upon their termination; (2) the provision for sick leave in Cunningham's contract was part of a void contract; and (3) the sick leave provision was part of the severance package set forth in the contract, and the Payment of Wages Act excludes severance from the definition of "wages." Finally, the circuit court concluded Cunningham could not avail himself of the public policy exception to the at-will employment doctrine in support of his wrongful discharge claim because he did not claim that he was an at-will employee. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in granting summary judgment to the County as to the breach of contract cause of action on the ground that Cunningham's employment contract was void?

2. Did the circuit court err in granting summary judgment to the County as to Cunningham's cause of action for violation of the South Carolina Payment of Wages Act on the ground that Cunningham's accrued sick leave did not constitute "wages" under the Act?

3. Did the circuit court err in granting summary judgment to the County as to Cunningham's wrongful discharge cause of action on the ground that Cunningham did not claim he was an at-will employee?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383

S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.2009). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *S.C. Prop. & Cas. Guar. Ass'n v. Yensen,* 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct.App.2001). Rather, "[t]he purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder." *Matsell v. Crowfield Plantation Comm. Servs. Ass'n, Inc.,* 393 S.C. 65, 70, 710 S.E.2d 90, 93 (Ct.App.2011) (citing *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)).

An adverse party may not rely on the mere allegations in his pleadings to withstand a summary judgment motion, but must set forth specific facts showing there is a genuine issue for trial. *Strickland v. Madden,* 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct.App.1994). Nonetheless, "in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–S. Mgmt. Co.,* 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Id.* at 329–30, 673 S.E.2d at 802.

## LAW/ANALYSIS

### I. Breach of Contract

 Cunningham asserts the circuit court erred in concluding that his employment contract was void. We disagree.

In *Piedmont Public Service District v. Cowart,* this court considered a twenty-year employment contract between a special purpose district and its administrator that required five years' severance pay. 319 S.C. 124, 459 S.E.2d 876 (Ct.App.1995) (*Cowart I* ), *aff'd,* 324 S.C. 239, 478 S.E.2d 836 (1996) (*Cowart II* ). Relying on *Newman v. McCullough,* 212

S.C. 17, 46 S.E.2d 252 (1948), which involved an employment contract with the City of Greenville, the court held that the contract involved the "governmental or legislative powers" of the District, and, therefore, could not be binding on successor boards.[10] *Id.* at 133, 459 S.E.2d at 881. In applying the law of municipalities to the District, the court acknowledged that public service or special purpose districts are "not necessarily equivalent to municipalities or municipal corporations for all purposes." *Id.* at 131 n. 2, 459 S.E.2d at 880 n. 2 (citation omitted). However, the court noted "for the purpose of determining the scope of the District's power to enter into contracts, the law governing municipal corporations is applicable." *Id.* (citations omitted); *see also City of Beaufort v. Beaufort–Jasper Cnty. Water & Sewer· Auth.,* 325 S.C. 174, 178–79, 480 S.E.2d 728, 731 (1997) (applying *Cowart I* to Beaufort–Jasper County Water and Sewer Authority, a special purpose district).

In discussing contracts involving governmental or legislative powers, the opinions in *Cowart I* and *Cowart II* referenced not only municipalities but also "each governing body" and "the local governing body." *Cowart II,* 324 S.C. at 241, 478 S.E.2d at 837 (holding that the appointment of a public officer "is a governmental function that cannot be impaired by an employment contract extending beyond the terms of the members of the local governing body"); *Cowart I,* 319 S.C. at 133, 459 S.E.2d at 881 ("[I]t is clear the rule is intended to protect the public by insuring that each governing body has available to it the powers necessary to effectively carry out its duties."). By logical extension, the fundamental principle applied in *Cowart I* and *Cowart II* also applies to Anderson County's actions in the present case.[11]

---

10. The court also stated that the public policy concerns underlying this rule are equally applicable. in cases where the members of the governing body have staggered terms. *Id.* at 134–35, 459 S.E.2d at 881–82. Our supreme court agreed with this statement. *See Cowart II,* 324 S.C. at 241–42, 478 S.E.2d at 838 ("We agree with the Court of Appeals that the policy considerations are not changed by the bestowal of perpetual succession.").

11. Other jurisdictions have recognized the applicability of the prohibition against binding successor governing bodies to counties and county agencies. *See Telford v. Clackamas Cnty. Hous. Auth.,* 710 F.2d 567,

We find the following primer from *Cowart I* to be instructive:

> If the term of the contract in question extends beyond the term of the governing members of the municipality entering into the contract, the validity of the contract is dependent on the subject matter of the contract. The general rule is that, if the contract involves the exercise of the municipal corporation's business or proprietary powers, the contract may extend beyond the term of the contracting body and is binding on successor bodies if, at the time the contract was entered into, it was fair and reasonable and necessary or advantageous to the municipality. However, *if the contract involves the legislative functions or governmental powers of the municipal corporation, the contract is not binding on successor boards or councils.*

*Id.* at 132, 459 S.E.2d at 880 (emphasis added). Quoting from *Newman*, the court set forth the following rationale:

> [W]here the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council[,] *unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term*, no power of the council to do so exists, *since the power*

---

570 (9th Cir.1983) (applying Oregon state law to a contract of a county housing authority); *id.* ("An Oregon public body may not enter a contract for governmental functions extending beyond its own term of office."); *Valvano v. Bd. of Chosen Freeholders of Union Cnty.*, 75 N.J.Super. 448, 183 A.2d 450, 454 (1962) (stating that a county board's "eleventh-hour employment contract on the eve of a new administration" circumscribed the successor county board of its discretionary powers, "which powers should have been transmitted unimpaired to the newly-constituted board"); *id.* ("Public policy demands the utmost good faith and that municipal officials be not [sic] shorn of the discretionary powers of their office by any final action of their predecessors on their way out of office."); *Morin v. Foster*, 45 N.Y.2d 287, 408 N.Y.S.2d 387, 380 N.E.2d 217, 220 (1978) (recognizing that, but for a provision in a county's charter allowing for appointment of the county manager for a four-year term, the county's legislators would be unable to appoint the county manager for a term extending into the term of the legislators' successors); *Uintah Basin Med. Ctr. v. Hardy*, 54 P.3d 1165, 1168 (Utah 2002) (analyzing a contract between a doctor and a county-owned hospital); *id.* ("Under the governmental/proprietary test, a contract is ... unenforceable against successor governing bodies if it involves a governmental power or function....").

*conferred upon municipal councils to exercise legislative or governmental functions is conferred to be exercised as often as may be found needful or politic,* and the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors.

*Id.* at 132, 459 S.E.2d at 880–81 (quoting *Newman,* 212 S.C. at 25–26, 46 S.E.2d at 256) (emphasis added). The court distinguished between proprietary and governmental functions as follows:

[T]he difference between proprietary and governmental functions is often difficult to determine, because, as the scope of "governmentality" expands, the intertwining and overlapping of such functions make it increasingly more difficult to draw any definitive line of separation. However, it is clear the rule is intended to protect the public by insuring that each governing body has available to it the powers necessary to effectively carry out its duties. Thus, when determining whether a contract is binding on successor boards, it appears that *the true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired.*

*Id.* at 132–33, 459 S.E.2d at 881 (emphasis added) (citations omitted). Examples of proprietary functions include a town's contract with a private corporation to furnish parking meters to the town[12] and a city's contract with a private company for the operation of the city's waterworks system.[13]

In *Cowart II* our supreme court emphasized that the appointment or removal of a public officer "is a *governmental* function that cannot be impaired by an employment contract extending beyond the terms of the members of the local governing body." 324 S.C. at 241, 478 S.E.2d at 837 (empha-

---

12. *See Town of Graham v. Karpark Corp.,* 194 F.2d 616, 619 (4th Cir.1952).

13. *See Green v. City of Rock Hill,* 149 S.C. 234, 147 S.E. 346 (1929). This should not be confused with the power to decide when a governmental entity may provide water to anyone in its own service area, i.e., the "provision of water service," which is a governmental function. *See City of Beaufort,* 325 S.C. at 180–82, 480 S.E.2d at 731–32.

sis added) (citation omitted). "Such a contract is not binding on the successors to the local governing body." *Id.*[14] "[T]he rule is intended to ensure that governing bodies are free to discharge their governmental duties in the manner they deem appropriate and beneficial to the public they serve." *Cowart I*, 319 S.C. at 135, 459 S.E.2d at 882. An exception to this rule exists when "enabling legislation *clearly authorizes* the local governing body to make a contract extending beyond its members' own terms." *Cowart II*, 324 S.C. at 241, 478 S.E.2d at 838 (emphasis added).

Cunningham argues that *Cowart I* and *Cowart II* do not apply to this case because *Cowart I* applied the common-law principle known as Dillon's Rule, which our supreme court

---

14. Other jurisdictions also recognize this fundamental principle. *See Grassini v. DuPage Twp.*, 279 Ill.App.3d 614, 216 Ill.Dec. 602, 665 N.E.2d 860, 864 (1996) ("[I]t is contrary to the effective administration of a political subdivision to allow elected officials to tie the hands of their successors with respect to decisions regarding the welfare of the subdivision."); *id.* ("This principle has not been confined in application to county governments.... Indeed, it has found expression with respect to employment decisions in ... the Municipal Code...." (citation omitted)); *City of Hazel Park v. Potter*, 169 Mich.App. 714, 426 N.W.2d 789, 793 (1988) (holding that an employment contract between an outgoing city council and the city manager was void on public policy grounds because it attempted to take away "the governmental or legislative power of the incoming council to appoint and remove public officers"); *Morin v. Foster*, 45 N.Y.2d 287, 408 N.Y.S.2d 387, 380 N.E.2d 217, 220 (1978) ("[I]t is obvious that the appointment of a county manager is precisely and unmistakably a governmental matter within the rule's purview and the Monroe County legislators would be limited by it but for the fact that the county charter specifically provides for appointment of the manager to a four-year term."); *Lobolito, Inc. v. N. Pocono Sch. Dist.*, 562 Pa. 380, 755 A.2d 1287, 1289 (2000) ("With respect to those agreements involving municipal or legislative bodies that encompass governmental functions, we have repeatedly held that governing bodies cannot bind their successors."); *id.* at 1289–90 ("The obvious purpose of the rule is *to permit a newly appointed governmental body to function freely on behalf of the public and in response to the governmental power or body politic by which it was appointed or elected....*" (emphasis added)); *id.* at 1290 n. 5 ("The rule against binding governmental successors is recognized in most other jurisdictions as well."); *Falls Twp. v. McManamon*, 113 Pa.Cmwlth. 504, 537 A.2d 946, 948 (1988) (holding that a three-year employment contract between the lame-duck supervisors of a township and the individual appointed by them to serve as police chief was invalid as against public policy because it was an attempt by the lame-duck supervisors to influence the governmental functions of their successors).

declared abolished by the Home Rule Act.[15] *See Williams v. Town of Hilton Head Island, S.C.,* 311 S.C. 417, 422, 429 S.E.2d 802, 805 (1993) ("This Court concludes that by enacting the Home Rule Act, ... the legislature intended to abolish the application of Dillon's Rule in South Carolina and restore autonomy to local government."). Dillon's Rule states:

> A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but· indispensable.

The court in *Cowart I,* which post-dated the Home Rule Act, admittedly recited Dillon's rule at the beginning of its discussion of the contract's validity. 319 S.C. at 131, 459 S.E.2d at 880. However, the court did not ultimately rely on Dillon's rule in determining that Cowart's employment contract was void. Rather, the court relied on the independent principle that governmental bodies have no authority to impair the power and discretion delegated to their successors by the public,[16] as aptly expressed in *Newman v. McCullough:*

> The power conferred upon municipal councils to exercise legislative or governmental functions is done so to be exercised as often as may be found needful or politic; and the council holding such powers is vested with no authority to circumscribe, limit or diminish their efficiency, but must transmit them unimpaired to their successors. *That acting as a governmental agency, it is bound always to act as trustee of the power delegated to it and may not surrender or restrict any portion of such power conferred upon it.*

212 S.C. at 25–26, 46 S.E.2d at 256 (emphasis added).

■ As stated above, when determining whether a contract is binding on successor governing bodies, "the true test is whether the contract itself *deprives a governing body, or its*

---

15. Codified at S.C.Code Ann. § 4–9–10 to –1230 (1986 & Supp.2012) for counties and at S.C.Code Ann. § 5–7–10 to –310 (2004 & Supp. 2012) for municipal corporations.

16. 319 S.C. at 132–36, 459 S.E.2d at 880–83.

*successor, of a discretion which public policy demands should be left unimpaired.*" *Cowart I,* 319 S.C. at 133, 459 S.E.2d at 881 (emphasis added). This prohibition against limiting the powers of a successor council as to governmental functions does not at all conflict with the requirement of the Home Rule Act to construe the powers of municipalities and counties in a liberal manner. *See* S.C.Code Ann. § 4–9–25 (Supp.2012) ("The powers of a county must be liberally construed in favor of the county...."); S.C.Code Ann. § 5–7–10 (2004) ("The powers of a municipality shall be liberally construed in favor of the municipality...."). Therefore, Cunningham's argument regarding the abolition of Dillon's Rule is irrelevant to our analysis.

Cunningham also argues that the County's enabling legislation, the Home Rule Act, clearly authorized the lame-duck council to enter into an employment contract extending beyond the outgoing members' terms of office. We disagree. Section 4–9–620 of the South Carolina Code (1986) states, in pertinent part, "The term of employment of the [county] administrator shall be at the pleasure of the council and he shall be entitled to such compensation for his services as the council may determine. The council may, in its discretion, employ the administrator for a definite term."[17] Despite Cunningham's argument to the contrary, the provisions of the Home Rule Act governing municipal corporations operating under the Council–Manager form of government contain identical language as to municipal managers. *See* S.C.Code Ann. § 5–13–70 (2004) ("The term of employment of the manager shall be at the pleasure of the council and he shall be entitled to such compensation for his services as the council may determine. The council may, in its discretion, employ the manager for a definite term."). Notwithstanding the existence of section 5–13–70, the courts in *Cowart I* and *Cowart II* continued to endorse the principle that a local governing body cannot bind its successor with regard to the appointment or removal of a public officer.

---

17. In his petition for rehearing, Cunningham references the "Surreply Brief of Amicus." We remind the parties that by order filed on June 1, 2012, this court declined to accept the Surreply Brief of Amicus for filing.

In any event, we do not view the language of section 4–9–620 as *clearly* authorizing the "definite term" to extend beyond the terms of the outgoing council members. Therefore, it does not fall within *Newman*'s exception to the prohibition against binding successor governing bodies. *See Cowart II*, 324 S.C. at 241, 478 S.E.2d at 838 (*"Newman* allows an exception, however, where the enabling legislation *clearly authorizes* the local governing body to make a contract extending beyond its members' own terms." (emphasis added)); *see also 16 Jade St., LLC v. R. Design Const. Co.*, 398 S.C. 338, 343, 728 S.E.2d 448, 450 (2012), *reh'g granted* (May 7, 2012) (holding that if a statute is in derogation of a common law right, it must be strictly construed and not extended in application beyond clear legislative intent); *Doe v. Marion*, 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct.App.2004), *aff'd*, 373 S.C. 390, 645 S.E.2d 245 (2007) ("[A]ny legislation [that] is in derogation of common law must be strictly construed and not extended in application beyond clear legislative intent."); *id.* ("Therefore, a statute is not to be construed in derogation of common law rights if another interpretation is reasonable."); *State v. Prince*, 316 S.C. 57, 66, 447 S.E.2d 177, 182 (1993) ("[I]t is presumed that no change in common law is intended unless the Legislature explicitly indicates such an intention by language in the statute." (citing *Nuckolls v. Great Atl. & Pac. Tea Co.*, 192 S.C. 156, 161, 5 S.E.2d 862, 864 (1939))); *Nuckolls*, 192 S.C. at 161, 5 S.E.2d at 864 (holding that it is presumed that no change in the common-law was intended by the legislature's enactment of a statute on the same subject unless the language employed clearly indicates such an intention); *id.* ("[T]he rules of the common-law are not to be changed by doubtful implication, or overturned except by clear and unambiguous language.").

Cunningham further maintains "[a] limiting interpretation of Section 4–9–620 also violates both the constitutional and statutory requirements that grants of power to Anderson County be interpreted as broadly as possible to include any fairly implied powers." Cunningham relies on S.C.Code Ann. § 4–9–25 (Supp.2012), which we previously referenced in this opinion. Section 4–9–25 requires the powers of a county to be liberally construed. Section 4–9–25 states in full:

All counties of the State, in addition to the powers conferred to their specific form of government, have authority to enact regulations, resolutions, and ordinances, *not inconsistent with the Constitution and general law of this State,* including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them. *The powers of a county must be liberally construed in favor of the county* and the specific mention of particular powers may not be construed as limiting in any manner the general powers of counties.[18]

S.C.Code Ann. § 4–9–25 (Supp.2012) (emphasis added).

We do not view this provision as authorizing a county's lame-duck council to bind the successor council as to governmental functions. Quite to the contrary, Cunningham's argument that the outgoing Council could so bind its successor would have a restrictive effect on county powers rather than a liberal one—that is, it would be restrictive on the successor governing body. Again, we find the statutory requirement to liberally construe the powers of a county, as long as consistent with our Constitution and general laws, to be compatible with *Newman*'s policy of prohibiting local governing bodies from binding their successors as to governmental functions unless clearly authorized by enabling legislation.

Cunningham argues in the alternative that the payment of severance under his employment contract would be a proprietary function rather than a governmental function, and, hence, the 2008 Council was permitted to bind the 2009 Council as to payment of his severance. *See Cowart I,* 319 S.C. at 132, 459 S.E.2d at 880 (holding that if the contract involves the exercise of the municipal corporation's business or proprietary powers, it is binding on successor bodies "if, at the time the contract was entered into, it was fair and reasonable and necessary or advantageous to the municipality"). Again, the appointment

---

18. Notwithstanding the existence of a virtually identical provision for municipal corporations, S.C.Code Ann. § 5–7–10 (2004), the courts in *Cowart I* and *Cowart II* continued to endorse the principle that a local governing body cannot bind its successor with regard to governmental functions.

of a public officer is a governmental function that cannot be impaired by an employment contract extending beyond the terms of the members of the local governing body. *Cowart II*, 324 S.C. at 241, 478 S.E.2d at 837. Accordingly, all provisions of such a contract, including provisions for severance pay, are void.

Based on the foregoing, the circuit court properly concluded that Cunningham's 2008 contract was void and could not bind the 2009 Council. Therefore, we affirm summary judgment for the County on this cause of action.

## II. Payment of Wages Act

Cunningham asserts the circuit court erred in concluding that his accrued sick leave did not constitute "wages" under the Payment of Wages Act. Contrary to the circuit court's ruling, Cunningham argues that the Act's exclusion of "severance" from the definition of "wages" does not bar his claim for sick leave because his contract's provision for payment of accrued sick leave was not part of the severance package required by the contract.[19] *See* S.C.Code Ann. § 41–10–10(2) (Supp.2012) (" 'Wages' means all amounts at which labor rendered is recompensed ... and includes vacation, holiday, and sick leave payments *which are due to an employee under any employer policy or employment contract.*") (emphasis added).

This court may affirm for any ground appearing in the record on appeal. Rule 220(c), SCACR. Here, we need not determine whether sick leave was part of the contract's severance package because the sick leave claim is based solely on the proposition that the contract was valid and binding on the 2009 Council.[20]

---

**19.** The circuit court's ruling as to the exclusion of severance from the Act's definition of wages was an alternative ruling; the circuit court's primary ruling as to the Payment of Wages claim was that Cunningham was not entitled to accrued sick leave "resulting from the termination of a void contract."

**20.** Cunningham submits the alternative argument that the contract's provision for payment of accrued sick leave is severable from the remainder of the contract pursuant to the severability clause in section 17(D) of the contract, which states, in pertinent part:

If any *provision*, or any portion thereof, contained in this Agreement is held to be unconstitutional, invalid, or unenforceable, in whole or

However, the contract was void. Further, Cunningham has admitted that he would not be entitled to sick leave from the County if his contract is determined to be void as the County did not have a policy of compensating its at-will employees for accrued sick leave upon their termination. Therefore, we affirm summary judgment for the County on this cause of action.

## III. Wrongful Discharge

 Cunningham maintains the circuit court erred in concluding he could not avail himself of the public policy exception to the at-will employment doctrine on the ground that he did not claim he was an at-will employee. We agree.

> In South Carolina, employment at-will is presumed absent the creation of a specific contract of employment. An at-will employee may be terminated at any time for any reason or for no reason, with or without cause. Under the "public policy exception" to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law.

*Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614, 713 S.E.2d 634, 636–37 (2011) (citations and quotation marks omitted).

in part, by any court of competent jurisdiction, the remainder of this Agreement or the portion thereof in question shall be deemed severable, shall not be affected thereby, and shall remain in full force and effect.

(emphasis added). The County maintains that this argument is not preserved because the circuit court did not rule on it and Cunningham did not file a Rule 59(e) motion seeking a ruling. Cunningham responds that because the trial court viewed the contract in its entirety as void, it would have been futile for him to seek a ruling on the severability argument. Assuming, without deciding, this precise issue is preserved for review, we reject Cunningham's argument. Because the circuit court correctly ruled that the contract was void in its entirety, no part of the contract is valid or enforceable against the 2009 Council.

However, "the public policy exception is not limited to these situations." *Id.* at 614, 713 S.E.2d at 637.[21]

■ Further, the existence of an employment contract does not preclude a determination that the employment is terminable at will. *See Cape v. Greenville Cnty. Sch. Dist.,* 365 S.C. 316, 319, 618 S.E.2d 881, 883 (2005) ("An employment contract for an indefinite term is presumptively terminable at will . . . .").

Here, within the wrongful discharge cause of action in the complaint, Cunningham alleged that the County conditioned his continued employment on his agreement to (1) "implement directives of individual council members, including those that violate actions directed by the body itself[;]" (2) commit acts violating "the public policy regarding the respective powers of Administrator and Council[;]" and (3) "commit acts that, upon information and belief, would violate the policy set forth in S.C.Code Ann. § 16–17–560[.]" Section 16–17–560 prohibits discharging a citizen from employment because of political opinions or the exercise of political rights and privileges.

■ The County states that Cunningham has never claimed to be an at-will employee, and, therefore; he may not obtain relief based on the law governing at-will employment. The County's statement is not entirely correct. Cunningham presented to the circuit court a "Supplemental Filing Regarding Plaintiff's Motions for Summary Judgment on Count[s] I and III and Defendant's Motion for Summary Judgment as to Counts I–III." Curiously, in this filing, Cunningham likened

---

21. "The public policy exception does not, however, extend to situations where the employee has an existing statutory remedy for wrongful termination." *Id.* at 615, 713 S.E.2d at 637; *see Epps v. Clarendon Cnty.,* 304 S.C. 424, 426, 405 S.E.2d 386, 387 (1991) (declining to extend the public policy exception when the employee has an existing remedy for a discharge that allegedly violates rights other than the right to the employment itself and stating that the appellant claimed an infringement of his constitutional rights to free speech and association, for which he could seek redress in a § 1983 action). Additionally, "[t]he determination of what constitutes public policy is a question of law for the courts to decide." *Barron,* 393 S.C. at 617, 713 S.E.2d at 638 (citation omitted). "It is not a function of the jury to determine questions of law such as what constitutes public policy. Rather, once a public policy is established, the jury would determine the factual question [of] whether the employee's termination was in violation of that public policy." *Id.*

his contract to the contract in *Stiles v. Am. Gen. Life Ins. Co.*, 335 S.C. 222, 516 S.E.2d 449 (1999) [22]: "Plaintiff's contract is, by statute, defined as one for a definite term and it *therefore* falls within the rule recognized by the majority in *Stiles.*" (emphasis added). While this argument is based on a misunderstanding of *Stiles,* it sufficiently undercuts the County's suggestion that Cunningham waived his "at-will" argument by not presenting it to the circuit court; Cunningham presented the argument, albeit incorrectly, that his contract should be treated like the contract in *Stiles,* which our supreme court viewed as "placing the employee in the same position as an at-will employee" with the only difference being the contract's notice provision. 335 S.C. at 226, 516 S.E.2d at 451.

On appeal, Cunningham continues to rely on *Stiles* by characterizing his contract as providing for "at-will status with a notice provision." Even though we have already determined Cunningham's contract to be void, we engage in the following analysis only to address Cunningham's characterization of his contract as "at-will." Cunningham claims that his contract's only limitation on the County's right to terminate him "was the requirement that the County abide by the severance provisions." Cunningham asserts that he "still faced termination for any reason, including a reason that violates public policy." Curiously, Cunningham maintains both that (1) the Master Employment Agreement established an at-will employment relationship, despite the contract's generous severance remedy, and (2) at the same time, he can recover contract damages if the County does not pay the designated severance amount upon terminating him without cause.

---

**22.** In *Stiles,* our supreme court expanded the public policy exception to the at-will doctrine to contracts with a mere thirty-day notice provision, technically a "contract for a definite term." 335 S.C. at 225, 516 S.E.2d at 450. However, this expansion was based on the fact that the employee did not have an alternative remedy for wrongful discharge as provided by typical contracts for a definite term; he was merely entitled to a thirty-day notice of termination. *Id.* at 225–26, 516 S.E.2d at 451. In other words, while a contact with a mere thirty-day notice provision technically becomes a contract for a definite term once notice is given, it is otherwise effectively an at-will employment contract leaving the employee with no remedy for a wrongful termination. *Id.* at 225–26, 516 S.E.2d at 450–51.

However, the contract's severance provisions served as the intended contractual remedy for termination without cause before the end of the three-year term; the intent underlying the contract was that such an event would trigger the requirement to pay Cunningham the remainder of his salary and benefits for the balance of the contract period. Such a contract does not establish an at-will employment relationship. *See Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992) ("The doctrine [of employment at will] in its pure form allows an employer to discharge an employee *without incurring liability* for good reason, no reason, or bad reason." (emphasis added) (citation omitted)); *see also Stiles*, 335 S.C. at 225, 516 S.E.2d at 450 ("The measure of damages when an employee is wrongfully discharged under a contract for a definite term generally is the wages for the unexpired portion of the term."); *id.* at 227, 516 S.E.2d at 451 (Toal, J., concurring) ("Employment in South Carolina has been classified as either for a definite term or at-will. Employment for a definite term has two important characteristics: (1) it exists for a fixed period of time; and (2) [it] may only be terminated before the end of that term by just cause." (citations omitted)); *id.* (Toal, J., concurring) ("If an employee is wrongfully terminated under a definite contract, the measure of damages is determined by the contract and is generally the wages for the unexpired portion of the term." (citation omitted)); *Shivers v. John H. Harland Co., Inc.*, 310 S.C. 217, 220, 423 S.E.2d 105, 107 (1992) ("This measure of damages allows an employee to receive the benefit of the bargain by putting him in as good a position as he would have been had the contract been performed.").

Cunningham cites *Angus v. Burroughs & Chapin Company*, 358 S.C. 498, 596 S.E.2d 67 (Ct.App.2004), *rev'd on other grounds*, 368 S.C. 167, 628 S.E.2d 261 (2006) and *Cape v. Greenville County School District*, 365 S.C. 316, 618 S.E.2d 881 (2005) in support of his position that his contract shows an intent to establish an at-will relationship. However, the contract in *Angus* stipulated that the public official was to be given "365 days notice *or* 365 days severance pay in the event of a termination." 358 S.C. at 500, 596 S.E.2d at 69 (emphasis added). The Record on Appeal in *Angus* shows that the contract left the choice between these two options to "the

discretion of [Horry County] Council" and did not set forth any distinction between termination with cause and termination without cause. In contrast, Cunningham's contract sets forth the grounds for termination "with cause" and requires the County to pay Cunningham his salary and financial benefits for the remainder of the three-year term if the County terminates Cunningham without cause.

Further, the contract in *Cape* contained language specifically stating "THIS IS AN AT–WILL EMPLOYMENT CON-. TRACT. IT MAY BE.TERMINATED AT ANY TIME FOR ANY REASON OR FOR NO REASON BY EITHER EMPLOYER OR EMPLOYEE." 365 S.C. at 317, 618 S.E.2d at 882. In contrast, Cunningham's contract states:

> The Administrator serves at the pleasure of Council, and nothing in this Agreement shall prevent,. limit, or otherwise interfere with the right of Anderson County Council to terminate the services of the Administrator at any time, *subject* only *to the provisions set forth in Section 3, Paragraphs A, B, and C of this Agreement.*

(emphasis added). Again, the provisions in Section 3, Paragraphs A and B, of Cunningham's contract set forth the grounds for termination "with cause" and require the County to pay Cunningham his salary and financial benefits for the remainder of the three-year term if the County terminates Cunningham without cause.

Our supreme court has not expanded the public policy exception beyond contracts like the one in *Stiles*. The reason is clear: contracts for a definite term that require the payment of severance in the event of termination without cause provide a remedy for the employee if he is wrongfully discharged. *See id.* at 225, 516 S.E.2d at 450 ("The measure of damages when an employee is wrongfully discharged under a contract for a definite term generally is the wages for the unexpired portion of the term."); *see also Cape*, 365 S.C. at 318, 618 S.E.2d at 882 ("Cape argues the judge erred in finding her contract was at-will. She *correctly* points out that decisions from this Court have indicated an employment contract for a specific term cannot also be at-will because these terms are mutually exclusively." (emphasis added)); *Stiles*, 335 S.C. at 228, 516 S.E.2d at 452 (Toal, J., concurring) ("[T]he

[public policy] exception is not designed to overlap an employee's statutory *or contractual rights* to challenge a discharge, but rather to provide a remedy for a clear violation of public policy *where no other reasonable means of redress exists.*" (emphasis added)).

 Here, the intent underlying Cunningham's contract was to provide the exact measure of damages specified by our supreme court in *Stiles*, i.e., the wages, or salary, for the unexpired portion of the three-year term. This ability to recover damages in the form of "severance" would normally preclude recovery under a cause of action for wrongful termination based on the public policy exception to the at-will doctrine. *See id.* However, as we have previously concluded, Cunningham's contract was void because it purported to bind the 2009 Council. It was the illegality of his contract, rather than any contractual intent to create an at-will employment relationship, that relegated Cunningham to an at-will status.[23] Hence, there is nothing incorrect or unjust in allowing Cunningham to seek any remedy available to an at-will employee. *See* Rule 8, SCRCP ("All pleadings shall be so construed as to do substantial justice to all parties."); *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) ("[P]leadings in a case should be construed liberally so that substantial justice is done between the parties."). Therefore, the circuit court erred in concluding that Cunningham was precluded from asserting a wrongful discharge claim based on the public policy exception to the at-will employment doctrine.

 The County also argues that even if Cunningham could invoke the public policy exception to the at-will employment doctrine, the facts alleged in the complaint would not entitle him to relief because they do not establish a violation of public policy. We disagree. Cunningham alleged that the County conditioned his continued employment on his agreement to engage in acts that would violate S.C.Code Ann. § 16–17–560, which prohibits discharging a citizen from employment

---

23. *See Barron*, 393 S.C. 609, 614, 713 S.E.2d 634, 636–37 ("In South Carolina, employment at-will is presumed absent the creation of a specific contract of employment. An at-will employee may be terminated at any time for any reason or for no reason, with or without cause.").

because of political opinions or the exercise of political rights and privileges. Therefore, the allegations in Cunningham's complaint clearly invoke the public policy exception. *See Barron,* 393 S.C. at 614, 713 S.E.2d at 637 ("The public policy exception clearly applies in cases where ... the employer requires the employee to violate the law").[24]

█ Further, during the motions hearing, counsel for the County admitted that if the circuit court denied the County's summary judgment motion as to Cunningham's legal ability to assert the wrongful discharge cause of action and as to the sufficiency of the allegations in the complaint, then the parties would have to engage in further discovery. Counsel for both parties represented to the circuit court that they had an agreement to allow discovery on this cause of action if the circuit court denied summary judgment on it. Both counsel further agreed to allow the County the option of submitting another summary judgment motion on the wrongful discharge claim after the completion of discovery. "Summary judgment is a drastic remedy and must not be granted until the opposing party has had a full and fair opportunity to complete discovery." *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (citation omitted).

Finally, Cunningham has demonstrated the likelihood of uncovering additional relevant evidence during discovery. *See Dawkins,* 354 S.C. at 69, 580 S.E.2d at 439 (holding that when the nonmoving party requests a delay in ruling on a summary judgment motion until further discovery may be completed, the party must demonstrate the likelihood that further discovery will uncover additional relevant evidence). Cunningham testified in his deposition that Eddie Moore, who had recently been elected but had not yet taken office, stated to him: " '[T]here are lots of employees that there's problems with ... If I were to give you a list of employees to fire, would you get rid of them?" Cunningham responded by indicating that there would have to be a reason for a termination and "some demonstration of some attempt to remedy the situation in

---

24. We decline to rule on whether the other allegations in the complaint invoke the public policy exception. See *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds.").

most cases...." Although Mr. Moore was not yet seated on council, after he was sworn in he voted to terminate Cunningham's employment. Hence, Cunningham's testimony sufficiently demonstrates a likelihood that further discovery will uncover additional evidence relevant to an attempted violation of section 16–17–560.

Based on the foregoing, we reverse the grant of summary judgment on the wrongful discharge claim and remand the claim to the circuit court so that the parties may engage in further discovery.

## CONCLUSION

Accordingly, we affirm the circuit court's grant of summary judgment to the County as to Cunningham's causes of action for breach of contract and violation of the Payment of Wages Act. We reverse the circuit court's grant of summary judgment to the County as to Cunningham's wrongful discharge cause of action and remand to the circuit court to allow the parties to engage in further discovery.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and THOMAS, JJ., concur.